## NEW HAMPSHIRE INSURANCE COMPANY, Plaintiff and Appellant,

v.

## Myron VETTER, Robert F. Yackley and L.J. Spivey, d/b/a Yackley Partnership, Dick Seaman and Rosella Seaman, Defendants and Appellees.

### No. 13752.

Supreme Court of South Dakota.

Considered on Briefs Oct. 15, 1982.

Decided Nov. 24, 1982.

Donald A. Porter of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for plaintiff and appellant.

Raymond J. Voelker, Jr. of Voelker & Adams, Deadwood, for defendants and appellees.

DUNN, Justice.

This is an appeal from a judgment by the circuit court ordering New Hampshire Insurance Company (appellant) to pay its insured, Myron Vetter, one of the appellees (Vetter), $53,000, plus interest, for the loss of a home by fire in Lawrence County, South Dakota. We affirm.

In July of 1977, Dick Seaman (Seaman) went to the Black Hills of South Dakota looking for land to purchase. While there, he found land in Lawrence County to his liking. After speaking with his attorney and his accountant, Seaman determined he needed a tax free exchange in order to obtain the land. In essence, Seaman wanted to exchange the Sully County land he owned for the Lawrence County land and thereby avoid any tax liability.

Although the owner of the Lawrence County land was not opposed to this type of transaction, he wanted to be compensated for his property immediately due to health problems. To keep the tax free exchange option alive, Seaman developed a plan. First, Seaman got his friend Vetter to buy the Lawrence County land with Seaman's money and hold it for him. Then, Seaman would find a buyer for his Sully County

land. In order to obtain the Sully County land the buyer would have to first purchase the Lawrence County land being held by Vetter. Finally, Seaman would exchange his Sully County land for the Lawrence County land which the buyer had just obtained. Thus, Seaman would then own the Lawrence County land and the purchaser would own the Sully County land.

The first step of the plan was carried out immediately. With Seaman's money, Vetter purchased the Lawrence County land. Then, since a buyer could not be produced at the desired terms, Seaman rented his Sully County land to Robert F. Yackley and moved himself and his family to the Lawrence County land in the summer of 1978.

Seaman and Vetter entered into a written secret agreement to ensure that their intent regarding the land transactions would be carried out should one of them die before the arrangements were complete. Among other things, the agreement provided that Seaman would provide Vetter with cash to make payments on the Lawrence County acreage, to purchase insurance, pay interest, and make other incidental payments. Vetter, on his part, agreed to accept the money and make the payments as directed. Moreover, Vetter provided Seaman with promissory notes equal to the value of the land payments (interest and principal), taxes and insurance.

As the new owner of the Lawrence County land, Vetter did not purchase insurance until the former owner's policy ran out. Then, on January 27, 1978, Vetter purchased a three-year "comprehensive farm policy" from an agent representing appellant. Although the secret agreement between Vetter and Seaman was silent as to who would receive the proceeds from any loss incurred while Vetter held the land, Vetter testified that he believed whatever flowed as a natural result of the insurance transaction was to be the property of Seaman. Vetter also noted in his testimony that he never intended to profit from these transactions. Rather, he was simply performing a service for a friend.

The second phase of the plan, finding an interested buyer for the Sully County land, took some time to accomplish. In 1979, Yackley became serious about obtaining the Sully County property which he was renting. To accomplish the purchase, Yackley entered into an informal partnership with L.J. Spivey and they agreed to obtain the land under the name of Yackley Partnership. Seaman and his attorney determined the terms of the sale of the Lawrence County land. In the resulting contract between Vetter and Yackley Partnership, it was agreed that the seller, Vetter, was to keep the property insured. The contract for sale of the Lawrence County land between Vetter and the Yackley Partnership gave Vetter $115,000 on December 28, 1979, and the remaining $85,000 was due when the Federal Land Bank loan was finalized for the Yackley Partnership. That finalization was expected on January 15, 1980. Presumably these proceeds were to be used to pay off the promissory notes which Vetter had signed in favor of Seaman.

Finally, after Yackley Partnership had obtained the Lawrence County land, the last step of the plan could be accomplished. Another contract was then entered into between Seaman and the Yackley Partnership. The contract provided, *inter alia,* for the exchange of the Lawrence County land for the Sully County land. The exchange contract, which was signed on December 28, 1979, was silent as to insurance coverage to be provided for the Lawrence County land.

On December 31, 1979, Seaman recorded several warranty deeds with the Lawrence County Register of Deeds. The first passed title from the former owners of the Lawrence County land to Vetter. The second passed title to the same land from Vetter to the Yackley Partnership. The last was the deed representing the exchange of property and passed ownership of the Lawrence County land from the Yackley Partnership to Seaman. The latter two deeds were both executed three days earlier on December 28, 1979.

Unfortunately, on January 6, 1980, the dwelling house on the Lawrence County land burned to the ground. The fire oc-

curred within the effective dates of the policy purchased by Vetter from appellant but before the final January 15, 1980, payment from Yackley Partnership was received. Due to some complications, the final $85,000 payment due Vetter was not paid until October 9, 1980. Since the house the Seamans were living in was destroyed, they have since purchased and moved into a used mobile home in Deadwood, South Dakota.

An action for a declaratory judgment to determine whether there was coverage for Vetter for property damage arising out of the fire loss was thereafter commenced by appellant. The trial court found appellant to be liable to Vetter and the parties entered into a stipulation concerning the amount of damages to the Lawrence County home. Soon after, the trial court ordered appellant to pay Vetter the stipulated amount of $53,000, plus interest. A subsequent attempt by Vetter to amend the judgment to include attorney fees was denied.

The sole issue in this case is whether the final $85,000 payment to Vetter from Yackley Partnership, made subsequent to the fire loss, extinguished Vetter's right to the proceeds of the New Hampshire policy.* We do not believe it does.

This precise issue is one of first impression in South Dakota. A good example of treatment given this question in other jurisdictions is found in *Dubin Paper Co. v. Insurance Co. of North America,* 361 Pa. 68, 63 A.2d 85 (1949). There the premises which were the subject of the sale were damaged before the purchaser could complete the sale. The purchaser proceeded to pay the balance of the purchase price, however, upon being assured by the vendor that he would help the vendee settle with the vendor's fire insurance companies. Like the case at hand, the insurance companies there contended that payment was not due since the purchase price was subsequently paid and the vendor thus suffered no loss. The court held the fact the owner of the destroyed property had or could recoup his loss by resort to a contract liability of a third person in no way affected the liability of the insurers, in the absence of an exemption in the policy. Their rationale being that the money due on a policy of insurance for a loss by fire occurring between the agreement of sale and the time fixed for settlement belongs to the vendor, although the vendor holds the money as a trustee and must then account to the vendee for it. Other courts have also concluded that the fact a vendor was subsequently paid in full by the purchaser, consequently resulting in no personal monetary loss to the vendor, is not a valid justification for nonpayment of the claim. *See Board of Trustees, Etc. v. Cream City Mutual Ins. Co.,* 255 Minn. 347, 96 N.W.2d 690 (1959); *Evans v. Crawford County Farmers' Mut. Fire Ins. Co.,* 130 Wis. 189, 109 N.W. 952 (1906).

■ We are persuaded that the rationale followed in these courts should be applied to the case at hand. Thus, the order of the trial court requiring appellant to pay Vetter for the loss incurred is affirmed. We also agree with the court in *Dubin, supra,* that the vendor who receives the money holds the money as a trustee and is accountable to the vendee for it. This latter position is bolstered by a reading of Appleman's Insurance Law and Practice § 3366 (citations omitted), which states: "[C]arrying out the contract without abatement of price after the building burned [would not] affect the purchaser's rights to the insurance money." This court has also stated that in circumstances similar to these "that the insurance money belongs 'to him on whom falls the loss ....'" *Russell v. Elliott,* 45 S.D. 184, 190, 186 N.W. 824, 826 (1922) citing *Brakhage v. Tracy,* 13 S.D. 343, 83 N.W. 363 (1900).

* Appellant does not dispute the trial court's finding that Vetter had an insurable interest (defined at SDCL 58–10–8) at the time he purchased the fire policy and at the time of the loss. The trial court concluded that Vetter had an insurable interest by virtue of his statutory vendor's lien to the extent of $85,000 at the time of the loss by the fire. Since these issues were not raised, we do not address these areas on appeal.

The complication in the case at hand is that the purchaser of the Lawrence County land was the Yackley Partnership, which then ultimately exchanged the property with Seaman for some Sully County land. The question becomes: which party should receive the insurance proceeds being held in trust by Vetter—Yackley Partnership as vendee in the sale of the Lawrence County land or Seaman as the ultimate vendee to the exchange agreement?

We believe Seaman is the party who ultimately suffered the loss and thus is entitled to the proceeds awarded to Vetter. Seaman exchanged property in Sully County for property in Lawrence County. Located thereon, *inter alia,* was a dwelling house. The exchange is now complete but Seaman is deprived the full benefit of his bargain because the dwelling house was destroyed before the exchange was complete. Moreover, as noted in testimony by Vetter, there was an understanding between the parties that in the event of loss the proceeds would be Seaman's property.

Finally, we note that this litigation could have been avoided had the contract between the exchanging parties simply addressed the issue of insurance as it related to the Lawrence County property. Clients should not be forced to pursue judicial redress when proper draftsmanship would have prevented the problem from the outset.

The judgment is affirmed.

All the Justices concur.