## SPEER v. PHILLIPS et al.

In the absence of fraud or mistake, a contract of sale, stating that the vendee's land is a part of the consideration, cannot be varied by parol evidence that the land was commission paid by him to his agents for procuring the contract.

One cannot complain of errors which he has invited.

A suit for damages is the purchaser's only remedy when the vendor conveys to another.

Before a vendor who has accepted overdue payments on a contract providing that time is the essence thereof can terminate it and claim a forfeiture for a subsequent default, he must give notice of his election so to do and give the vendee a reasonable time to pay.

(Opinion filed Nov. 17, 1909.)

Appeal from Circuit Court, Brookings County. Hon. GEORGE H. MARQUIS, Judge.

Action by Horace S. Speer against W. H. H. Phillips and another. From a judgment for plaintiff, defendants appeal. Affirmed.

*Hall, Lawrence & Roddle,* for appellants. *Jenkins & Jackson,* for respondent.

McCOY, J. It appears from the evidence in this case that on the 18th day of September, 1901, a certain written contract was made by and between W. H. H. Phillips and Edward C. Phillips, the defendants, as parties of the first part, and Horace S. Speer, the plaintiff, as party of the second part, wherein and whereby the defendants, as parties of the first part, agreed to sell to the plaintiff the N. W. ¼ of section 7, township 109, range 49, in Brookings county, S. D., containing 160 acres, and that plaintiff, as said party of the second part, thereby covenanted and agreed to pay to the said defendants a warranty deed, free of all incumbrances, of certain lands situated in Cherry county, Neb., and also the sum of $4,200 in manner following, to wit: The sum of $500 due at or before the execution of this contract; the sum of $300 on or before the 1st day of March, 1903; the sum of $300 on or before the 1st day of March, 1904; the sum of $500 on or before the 1st day of March, 1905; the sum of $500 on or before the 1st day of March, 1906; and a first mortgage on said land of $2,100 on or before the 1st day of March, 1906, with interest on the balance until paid at the rate of 6 per cent. per annum, payable on October 1st annually, on the whole sum remaining from time to time unpaid, and to pay all taxes, assessments, and impositions that may be legally levied or imposed on the said land subsequent to the year 1901. The said contract also further provided that in case of the failure of the said party of the second part, this plaintiff, to make either of the payments, or interest thereon, or any part thereof, or perform any of the covenants on his part hereby made and entered into, then the whole of said payments and interest shall become immediately due and payable, and this contract shall at the option of the parties of the first part, the defendants, be forfeited and determined, and, if this agreement shall have been recorded in any register of deeds or recorder's office, then the filing of a declaration of forfeiture, setting forth the fact of such forfeiture, in said office by said first parties, shall be sufficient to cancel all obligations hereunto on the part of the first parties, and fully reinvest them with all right, title, and interest hereby agreed to be conveyed, and the party of the second part shall forfeit all pay-

ments made by him on this contract and his right, title, and interest in all buildings, fences, or other improvements whatsoever shall be retained by the said parties of the first part in full satisfaction and liquidation of all damages by them sustained, and they shall have the right to re-enter and take possession of the premises above described; and it is mutually agreed by and between the parties hereto that the time of payments shall be an essential part of this contract. In pursuance of said contract the plaintiff, by a tenant, entered into the possession of the said lands and cultivated and farmed the same during the years 1902 and 1903, and under and by virtue of said contract the plaintiff delivered to defendants a deed of said Nebraska land, paid to the defendants the said sum of $500 due at the execution of said contract and the sum of $210 interest due October 1, 1902, and the sum of $300 due on or before the 1st day of March, 1903, and $168, a portion of the interest due October 1, 1903. This last payment of $168 interest was made about October 28, 1903, and was the last payment ever made by plaintiff, although some time in January plaintiff sent to defendants authority to collect certain sums due plaintiff from his tenant who resided on said land, and that defendants collected some $40 from such tenant, but which $40 was afterwards repaid by defendants to plaintiff. Some time in September, 1903, the plaintiff wrote defendants that, on account of hail having destroyed the greater part of his crops on said land, he would be unable to make the payments under said contract, and asked for an extension of the time for making such payments. On September 29, 1903, defendant W. H. H. Phillips wrote plaintiff: "Your favor of recent date at hand. If you come on your land and get some plowing done this fall I would be willing to grant some extension of your payments because I should then feel that you would be likely to eventually pay for the place. I would want interest kept up. I have to pay $168.00 Nov. 1st on the $2,100.00 mortgage, being 1 1-3 years' interest at 6 per cent. I hope I can depend upon that and balance of your interest as soon as you can. I am paying 8 per cent. on $1,485.00 to Fishback. I am carrying too much land and if I can sell enough to clear up what I owe on

it I shall be in no hurry about your payments. I had good results from that farm. You can and besides it will be better if you go on it than if left to a renter. You see how I am situated just now. Most of my crops were hailed out or drowned out and our real estate business has stopped, but I will do the best I can for you." And on October 7th plaintiff again wrote defendants, as follows: "Your favor of recent date came to hand in due time and although I have not answered as soon perhaps as you think I should, I have been trying to figure out to comply with your terms, that is, to come on the farm myself. I am having hopes of selling out here now and if I can do that I will be in a position to get up there in due time for another season, but I don't see how I can get up there to do any plowing this fall. Would it be just the same to you if I could hire some plowing done for me? I need to be here now not so much for the sales but to collect for what I have sold. I will expect to have the $168.00 for you by Nov. 1st, and hope you can see your way clear to put off the balance for a while at least. You said in your letter that if I came on the land you thought you could grant me some extension of the payments, but you did not say just what it would be. Could you put them all one year later, do you think or would they double up on me? I am writing Mr. Watson today in regard to doing some plowing for me;" and Oct. 16th, 1903, defendant again wrote plaintiff as follows: "I am willing to give you an extension of time on your payments if you will keep up the interest. Pay the $168.00 this month and the balance on or before the first of January, 1904, then if you cannot make the March payment I will make a new contract with you and give you a new extension for 6 mos., or a year if you need it. In any case I would want to be assured that the farm will be kept in good condition and cropped. I hope that this will be satisfactory to you." On October 30th defendant again wrote plaintiff: "Received your favor of the 28th with draft for $168.00 to apply on your interest due Oct. 1st. I see that taxes have not been paid. They are $13.20. Does McKnight have charge of the farm? I will see if he can collect from your crop. I am short just now but will fix it some way

for you until you can send the money." On January 1, 1904, the defendant again wrote the plaintiff, as follows: "Yours of the 28th came to hand. I hardly know what to advise you. I will be glad to do anything I can to help you in paying for the land. I wrote Mr. Watson to look after your crop and drove down, my son also, yesterday, but we did not find him at home. He is working at every job he can get to make up for his loss by hail. I drove into the corn, it is soft but ought to have been saved. I do not know whether it will pay now to pick it. You ought to have some responsible person to look after your crops. Hay is something of a drug now, so many cut their hailed grain early and put it up for hay. I will go down and try to get enough out of it to pay for the taxes. Another ½ tax must be paid March 1st. If you will keep up the interest I will wait on you for the payments. You may be able to sell if you offer the land low enough and not lose what you have put into it, or you may be able to trade your equity for something you can handle. Let me know your lowest price you will take." · Plaintiff then wrote defendants to collect what was coming from the tenant and apply on interest and taxes, and defendant wrote he would try and see what he could do. Defendant claims that some time, during February in conversation he told plaintiff that he must have his money or the contract would be void, but this conversation is denied by plaintiff. This closed the communications between the parties. On February 13, 1904, defendants entered into a written contract to sell or trade the said Phillips land to one Templeman for a stock of merchandise, and on the 16th day of March thereafter the defendants, by warranty deed, conveyed· said land to Templeman, who thereupon immediately took possession. The plaintiff brought suit against defendants alleging breach of contract, and seeking to recover damages therefor; the damages claimed by plaintiff being the value of the Nebraska land, and the amount paid in money to defendants under the contract. The defendants answered, and the case was tried to a jury and a verdict rendered in favor of plaintiff for $1,400, and judgment subsequently entered thereon. The defendants moved for a new trial, which being overruled, they bring the cause to

this court, alleging 118 errors to have been made by the court, and also alleging 20 particulars wherein the evidence is claimed to be insufficient to sustain the verdict. These allegations of error and specifications of insufficiency of evidence are so numerous that it will be impracticable for us to consider each separately, but will take up the general proposition discussed which we deem material to the decision of this case.

The defendants admitted the making of the contract as hereinbefore stated. The defendants denied that the Nebraska land was a part of the consideration for the sale of the lands owned by defendants, and alleged that the Nebraska lands went to the agents of plaintiff as commissions for purchasing said lands for him, and that defendants had nothing whatever to do with the Nebraska lands in the transaction. In the first place, it will be observed that the contract which the defendants admitted they made says that the Nebraska land is a part of the consideration for the Phillips land. No other reasonable construction can be placed thereon. The plaintiff agreed to pay the Nebraska land and the $4,200 for Phillips land. The Nebraska land was as much a part of the consideration as the $4,200. The defendants could as well have said that the $4,200 was not a part of the consideration. Without some claim or allegation of fraud or mistake in the making of said contract whereby the same might be reformed, the same could not be varied by such testimony, and the defendants would not be permitted to repudiate otherwise the terms of the contract; and the defendants by their answer and by cross-examination of plaintiff brought into the trial of this case an immaterial issue, so that whatever error, if any, crept into the trial of this case by reason of the question as to whether or not the Nebraska land was commission paid by plaintiff to his agent, or was a part of the consideration for the Phillips land under the contract, was upon the invitation of defendants, and of which defendants now have no right to complain. All the evidence in relation to this question was at variance with the admitted terms of the contract. The objections of plaintiff made to the introduction of evidence of this character on the ground that it sought to vary the terms of the contract and was

immaterial were properly sustained by the court. There appears to have been no improper rulings in the admission or rejection of evidence on this question that should be considered reversible error.

A great number of errors are alleged to have been committed by the court in the reception of certain evidence tending to show that no declaration of forfeiture was ever made and filed by defendants, or that no notice of intention by defendants to forfeit the contract was ever given to plaintiff, on the ground that such evidence was immaterial, and not relevent to the issue. But we are of the opinion that appellant's proposition is not tenable in this respect. In Keator v. Ferguson, 20 S. D. 473, 107 N. W. 678, a case where the vendee of real estate sought specific performance against the vendor, this court in rendering decision said: "It seems eminently just and equitable that the party who has neglected to enforce the provisions of his contract providing that time shall be of the essence of the contract at the time the default is made, and accepts performance of the terms thereafter, should not be allowed upon a subsequent default to enforce the provisions without giving the other party notice that he intends to enforce the same and a reasonable opportunity to comply with the terms of the contract. To hold otherwise would enable a party to take undue advantage of his contract by accepting payments after the time they were to be paid by the strict terms, and, after having induced a party to make a number of payments, then without notice and without giving the party an opportunity to comply with the terms of the contract declare it terminated, and the amount thereunder to be forfeited. In the case now before us the defendant had received $400 of her principal and certain improvements had been made upon the property. She had permitted plaintiff to believe at least that she would not insist upon strict performance with the contract by receiving the sum of $222 some 12 or 13 days after the same was claimed by her to be due, without objection, and had permitted the rent for the year 1900 to remain unpaid apparently without objection, and by waiting until the 4th day of October, 13 days after she claimed the payment to be due, before notifying the plaintiff of her elec-

tion, and she must therefore be regarded as having waived the benefits of the provision making the time the essence of the contract, to the extent, at least, that she was required to give him a reasonable opportunity to comply with the same." While the case at bar is not a specific performance action, the principle involved is the same as if it were. The defendants, by placing it out of their power to specifically perform by transferring title to Templeman (Leisch v. Baer, 24 S. D., 123 N.W. 719) only left the plaintiff the remedy of damages for breach of contract. There is no evidence in this case tending to show that plaintiff himself abandoned the contract, while the evidence does show the contrary, and the evidence, to say nothing of the agreement to extend the time of the payments mentioned in the letters of defendants to plaintiff, that the defendants received the $168, '28 days after due, and further voluntarily extended the time of paying interest and taxes, brings this case squarely within Keator v. Ferguson, supra, requiring that defendants, before they could lawfully terminate said contract, to give notice to plaintiff, and fix a further time which would give reasonable opportunity for him to comply with the contract before defendants could claim a forfeiture and termination thereof. Numerous other authorities sustain this view. O'Connor v. Hughes, 35 Minn, 446, 29 N. W. 152; Cummings v. Rogers, 36 Minn. 317, 30 N. W. 892; Fargusson v. Talcott, 7 N. D. 183, 73 N. W. 207; Boyum v. Johnson, 8 N. D. 306, 79 N. W. 149. The case of O'Connor v. Hughes, supra, involves precisely the same question under consideration here; and in rendering that decision the court used the following language: "Since the rights of the vendee were thus made to depend upon the fact as to whether the vendor should determine to insist upon exact compliance with the terms of payment, it would be neither equitable nor in accordance with a reasonable construction of the contract itself that an election to insist upon strict performance should be secretly and summarily made, and have the effect to make default alone to work a forfeiture. The vendee should be seasonably advised of the determination of the vendor, so that he might have reasonable opportunity to comply with the requirements of the contract, made absolute and strict

only by the election of the adverse party. Quinn v. Olson, 34 Minn. 422, 26 N. W. 230; Pom. Cont. 393. Such notice might have been given before the time named · for payment, or, if not so made, notice might have been given after default, fixing a further reasonable time within which payment would be required; but the rights of the purchaser under a contract not absolutely terminated could not be extinguished by a summary declaration of forfeiture. The mere failure of the vendee, therefore, to make payment at the times named therefor, did not extinguish his equitable rights under the contract; nor does it appear that, when the vendor assumed summarily to cancel the contract, anything had been done or had occurred as by notice, such as we have spoken of, or otherwise, which of itself would have the effect to terminate the contract, or to render it inequitable that specific performance should be required of the vendor." The plain import of Keator v. Ferguson and Hughes v. O'Connor seems to be that where the vendor of real estate under a contract like the one under consideration accepts payments overdue by the terms of the contract, before he can terminate the contract and claim a forfeiture of the payments already made, he must give the purchaser notice of his determination and election to terminate such contract, and must fix a future date within which the payments past due must be made; and which notice must, in substance, state that the vendor has elected and determined to terminate such contract, unless such payments are made by a certain fixed date, far enough in the future, to give the purchaser reasonable time and opportunity to comply with the contract by making such payments; and that then, after the failure of the purchaser to respond to such notice, the contract will terminate and a forfeiture take place. It does not appear from the record that any notice, or anything that might by any possibility be construed as such notice, was ever given to plaintiff, either before or after the transfer of · said land to Templeman. The very utmost that is claimed by defendant on this subject is that defendant wrote plaintiff that he would like to have the money, and a conversation as follows, some time in February, 1904: "I asked him if he could make the payment that would be due

March 1, 1904, and he said he had not thought of it, and in reply I told him the contract would be void"—and which conversation is denied by plaintiff; but, conceding that the same was not denied, still there is nothing therein contained from which plaintiff might infer, or might be charged with notice that, unless such payment was made, as a consequence thereof defendants would terminate the contract. At that time plaintiff and defendants were still making propositions to one another looking towards an extension of time of all payments. There was never any termination of the contract, but the same was in full force and effect between plaintiff and defendant at the time of the conveyance to Templeman. Plaintiff is therefore entitled to recover damages by reason of such breach of contract. In Barnes v. Clement, 12 S. D. 270, 81 N. W. 301, this court said that forfeitures were odious in the eyes of the law; and this case also indicated the rule or measure of damages for such a breach of contract to be the value of the payments made, less the value of the use and occupation of the land during the time the same was in possession of the purchaser under the contract. We are of the opinion that the material issues were submitted by the learned trial court under proper instructions, and that the verdict is amply sustained by the evidence.

Finding no error in the record, the judgment of the circuit court and order denying a new tral are affirmed.

WHITING, J., took no part in this decision.