RUSSELL, et al., Respondents, v. ELLIOTT, et al., Appellants.

(186 N. W. 823.)

(File No. 4933. Opinion filed February 8, 1922.)

1. Specific Performance—Vendees' Part Payment, Defects in Abstract of Title, Acceptance of Defective Title and Offer of Performance, Rejection of Payment Checks—Whether Vendees' Intent to Abandon Shown.

Where evidence showed that within time provided by contract to sell and convey realty, vendees notified vendors they would take the property, and in part performance gave checks each for $500 and requested abstracts of title, which later disclosed defective title, but thereafter some defects were removed, vendees still objecting to title and further corrections being made, whereupon the two checks were returned by one of vendors to one of vendees with statement that the deal was off; vendees having previously informed vendors they were willing to accept title as it then stood and expected to close the deal; held, these acts on part of vendees do not tend to show their intent to abandon the contract.

2. Same—Fire Insurance Loss on Building Burned After Realty Sale, Insurance Money, Whether Vendees Entitled to Credit Re.

Where, pending closing of a sale of contract of realty, a building thereon, upon which vendor had taken out insurance and paid the premium, was destroyed by fire, (no reference to insurance having been made in the sale contract); held, that trial court properly gave credit to vendees in the decree for specific performance for the amount of the insurance; that where purchaser completes purchase he is entitled to credit on purchase price for amount paid vendor on insurance policy taken out by himself; that as the building had an insurable value, it will be presumed the buildings were a material inducement to vendees to purchase the land, and no hardship

results to vendor from giving such credit to vendees; that under principle of natural justice, teachings of conscience and rules of reason denominated the life of the law, when a party holds property which another has a right to purchase at fixed sum, he should be faithful to the obligation that right imposes upon him; he should not mask the idea of obligation whenever chance occurrence renders it convenient and profitable to do so; that if at time vendee demanded conveyance, the property had remained as it was after the fire, without reparation, the insurance money being unexpended and unpledged for repairs in vendors' hands, vendee would have been entitled to receive it as part and parcel of the property which vendor was bound to convey (following Brakhage v. Tracy, 13 S. D. 343.)

3.  **Lis Pendens—Conveyancing—Vendees' Acceptance of Title Under Sale Contract, Vendor's Non-delivered Quitclaim Deed to Third Party Thereafter, Whether Grantee Charged With Knowledge of Vendees' Rights.**

Where, under a contract of sale of realty and where, although abstract of title showed certain defects therein, vendees after having paid part of the purchase money, stood ready and willing to complete their contract of purchase, vendors executed a quitclaim deed of an interest in the property to a third party, which deed was not delivered until vendees' suit for specific performance had been begun and notice of lis pendens recorded, held, that such grantee was charged with knowledge of vendees' equities in the property, and his rights were subordinate thereto.

Anderson, J., not sitting.

Appeal from Circuit Court, Brown County.    Hon. FRANK ANDERSON, Judge.

Action by C. A. Russell, N. J. Lindgren, J. A. Burris, and Sam Catros, against J. A. Elliott, George Woods and W. H. Nelson, to compel specific performance of a contract to convey realty. From a judgment for plaintiffs, and from an order denying a new trial, defendants appeal. Affirmed.

*Waddel & Dougherty*, and *Van Slyke & Agor*, for Appellants.

*Williamson, Williamson & Smith*, and *George H. Fletcher*, for Respondent.

(2)  To point two of the opinion, Appellants cited: White v. Gilman, 138 Cal. 375, 71 Pac. 436; May on Insurance, 2nd Ed. Sec. 450; Annotations to Williams v. Lilley, 37 L. R. A. 150.

Respondents cited: Brakhage v. Tracy, 13 S. D. 343; 39 Cyc. 1644; Vol. 1, Warville on Vendors, pp. 241-2; 27 R. C. L. Sec. 298.

POLLEY, J. Action to compel specific performance of contract to convey real estate. Findings of fact, conclusions of law, and judgment were in favor of plaintiffs, and defendants appeal.

The contract provided that upon compliance with certain conditions therein named the defendants Elliott and Woods would convey to plaintiffs Russell and Lingren, or to such persons as they might designate in writing within 90 days from the date of the contract. Abstracts of title were to be furnished and title to be approved by the purchaser. The complaint alleges a full compliance or offer to comply by plaintiffs with all the provisions of the contract upon their part. Elliott and Woods answered separately. Among other defenses pleaded they each alleged that—

"By mutual agreement of the parties to said contract, it was abandoned, terminated, surrendered and satisfied."

If this allegation is true, the judgment should be reversed, and the action dismissed.

[1] The undisputed evidence shows that within the time provided by the contract Russell and Lingren gave notice that they would take the property, and as part performance on their part gave Elliott and Woods each a check for $500, and requested the abstracts of title to the property. Upon examination of the abstracts several defects in the title were disclosed. The abstracts were returned to Elliott and Woods for the purpose of having the defects removed and the abstracts corrected. Some of the defects were removed, but Russell and Lingren still objected to the title, and further corrections were made. These transactions ran over a period of something like three weeks when one of the defendants went to plaintiff's office, laid the two checks that had been paid them by plaintiffs on a desk in the presence of plaintiff Lingren, and said the deal was off. Plaintiffs had already informed defendants that they were willing to accept the title as it then was, and said plaintiff told defendant that they (plaintiffs) expected to go through with the deal. These acts on the part of plaintiffs do not tend to show an intent on their part to abandon the contract.

The trial court found and the evidence shows that at the time plaintiffs gave notice that they intended to carry out the terms of the contract, and at all times since that date, they were ready, able, and willing to so carry out the terms thereof, and that the

defendants were acting in bad faith in attempting to avoid said contract.

[2]    At the time the contract was entered into defendants were carrying fire insurance on the buildings on the property involved. payable to the defendants, to the amount of $8,000; but no reference whatever to insurance was made in the contract. This insurance remained in force until April 7, 1920, when the buildings were destroyed by fire.   Prior to the trial of this action defendants collected $4,000 of the insurance money and received $325 for certain material that was saved from the fire.   These facts were set up in a supplemental complaint, and in the judgment entered by the trial court a credit of said amounts was allowed to the plaintiffs on the purchase price of the property. Defendants claim that this part of the judgment is erroneous and ask a reversal of the same.   This presents a question which, in just this form, has never been passed upon by this court, and one upon which the different courts do not agree.   The greater number of the reported cases appear to hold that, if the purchaser completes the purchase, he is entitled to a credit on the purchase price for the amount that has been paid to the vendor on insurance policies taken out by himself.   Skinner, etc., v. Houghton, 92 Md. 68, 48 Atl. 85, 84 Am. St. Rep. 485; Gates v. Smith, 4 Edw. Ch. (N. Y.) 702; Ins. Co. v. Updegraff, 21 Pa. 513; Reed v. Lukens, 44 Pa. 200, 84 Am. Dec. 425; Ry. Co. v. Spencer, 156 Pa. 85, 27 Atl. 113, 36 Am. St. Rep. 22; Williams v. Lilley, 67 Conn. 50, 34 Atl. 765, 37 L. R. A. 150.

In the following cases it is held that the insurance money paid on a policy of insurance taken out by the vendor belongs to him free of any trust in favor of the purchaser:   Phinizy v. Guernsey, 111 Ga. 346, 36 S. E. 796, 50 L. R. A. 680, 78 Am. St. Rep. 207; Gilbert v. Port, 28 Ohio St. 276; King v. Preston, 11 La. Ann. 95; Rayner v. Preston, 18 Ch. D. (Eng.) 1; Edwards v. West, 7 Ch. D. (Eng.) 858.

It will be seen, however, upon an examination of these cases, that the decision is determined by the facts involved in each particular case rather than by any general principle.   In White v. Gilman, 138 Cal. 375, 71 Pac. 436, the plaintiff under a contract to purchase a vacant lot went into possession and erected a dwelling house thereon.   After the house was erected and was being

occupied by plaintiff the defendant, who still owned the legal title to the lot, without the knowledge of plaintiff, took out a policy of insurance on the building. While this policy was in force the building was destroyed by fire, and defendant collected more on the policy than the amount due from plaintiff on the purchase price of the lot. When plaintiff learned these facts he demanded a deed without offering to pay the balance due on the contract, claiming that defendant had received all he was entitled to. The court held that, the vendor having taken out the insurance for his own benefit and at his own expense, plaintiff had no interest therein and was not entitled to any credit therefor on the purchase price of the lot. In Brakhage v. Tracy, 13 S. D. 343, 83 N. W. 363, this court held that, where property was insured for the benefit of the vendor, and the buildings had been destroyed by fire prior to conveyance, the purchaser was entitled to a credit on the purchase price for the amount paid on the insurance policy. But in that case the vendee had put up the building at his own expense and had paid the premiums on the insurance policy.

"As between the parties to a contract like this, the indemnity, when paid by the company, belongs to the one on whom the loss falls."

And quoting from Gilbert v. Port, 28 Ohio St. 276, this court further said:

"As between vendor and vendee, under a valid and subsisting contract for the sale of real estate, covered by a policy of insurance, where a loss insured against occurs after the date of the contract and before conveyance, the true test for determining to whom the money recovered on the policy belongs, in the absence of stipulations governing, is to determine who was the owner, and which party actually sustained the loss."

But the present case is distinguishable from both the two latter cases cited. In White v. Gilman, supra, there were no buildings on the lot when the contract was made, and the vendor secured the insurance at his own expense and without any understanding on the part of the vendee that he was to benefit thereby. In Brakhage v. Tracy, supra, there were no buildings on the lot when the contract was made, but the insurance was paid for by

the vendee, and with the understanding that the vendor should benefit thereby to the extent of his interest only.

In this case the buildings that were destroyed were on the property when the contract was made. What their value was does not appear, but that is not material. They had an insurable value of at least $8,000, and it may be assumed that the buildings were a material inducement to plaintiff to enter into the contract to purchase. Defendants having contracted to sell the property with the buildings thereon, there certainly can be no hardship in requiring them to deliver the property in the condition it was at the time plaintiffs gave notice of their intention to exercise their option to purchase, or, in case of the destruction of the buildings by fire, to credit them with the amount recovered for such loss. It is true, of course, as argued by defendants, that if they had had no insurance they would not have been liable for the loss of the buildings, but that is not material to the equities between the parties where there was insurance. In Williams v. Lilley, supra, the property under option was partly destroyed by fire. The vendor collected the insurance and repaired the loss. After the damage was fully repaired he had remaining a balance of more than $8,000 that he had received from the insurance companies. Thereafter the vendee elected to exercise his option to purchase and claimed he was entitled to a credit for the amount of insurance money left over after repairing the building. In considering the rightful disposition of this sum of money the court say:

"To whom, by the principles of equity and good conscience, upon the exercise of the plaintiff's option, does it belong? It appears to us that the principles of natural justice, the teachings of conscience, and the rules of that reason which has been denominated the life of the law, and without which it should not now exist, demand that, when a party holds property which another has a right to purchase from him at a fixed sum, he should be faithful to the obligation which that right imposes upon him, in its very spirit and essence; that he should not keep the idea of obligation out of sight whenever some chance occurrence renders it convenient and pecuniarily profitable for him to do so. We conclude, then, that if, in the case before us, the property, at the time the plaintiff demanded the conveyance, had remained as it was after the fire, without reparation, while the money received

for insurance was unexpended and unpledged for repairs in the hands of the defendants, the plaintiff would have been entitled to receive such money as part and parcel of the property, which it would have been the duty of the defendants to convey to him. Being money, it, of course, amounts to the same thing to deduct it from the stipulated purchase price."

Following this rule, which to us seems to be just and equitable, and the rule declared by this court in Brakhage v. Tracy, supra, that the insurance money belongs "to him on whom falls the loss," we hold that in this case, and under all the circumstances disclosed by the record, the plaintiffs are entitled to a credit on the purchase price of the property for the amount defendants have collected on the insurance.

[3.] After plaintiffs had given notice of their intention to take up the option the defendant Woods executed a quitclaim deed purporting to convey a one-half interest in the property to one W. H. Nelson, but this deed was not delivered to said Nelson until after the commencement of this action and the recording of a notice of the pendency thereof; therefore said Nelson was charged with knowledge of plaintiff's equities in the property, and his rights are subordinate thereto.

The judgment and order appealed from are affirmed.

ANDERSON, J., not sitting.