Robert E. HEINZMAN, Plaintiff
and Appellant,

v.

John Freeman HOWARD and Mary Jean
Howard, husband and wife, and the
State Bank of Alcester, a corporation,
Defendants and Appellees.

No. 14225.

Supreme Court of South Dakota.

Argued March 21, 1984.

Decided May 9, 1984.

Rehearing Denied June 18, 1984.

See also, 345 N.W.2d 61.

Michael J. McGill, Beresford, for plaintiff and appellant.

Charles B. Haugland of Beck, Gubbrud & Haugland, Alcester, for defendants and appellees.

FOSHEIM, Chief Justice.

This is an action by Robert E. Heinzman (vendor) to foreclose a contract for deed against John Freeman Howard and Mary Jean Howard (vendees) and to set aside as fraudulent their quitclaim conveyance to the State Bank of Alcester (bank). The trial court ruled that it was immaterial whether the conveyance was fraudulent because the transfer did not obstruct any rights of the vendor under the contract for deed. The court further concluded the ven-

dor could not rescind the contract because he failed to act promptly to enforce his contractual rights. We affirm the circuit court on all issues, modifying, however, its distribution of insurance proceeds from a fire on the property.

The contract for deed was entered on May 16, 1978, for the sale of 13 acres of Union County land. It required the vendees to pay the real estate taxes beginning June 1, 1978, and to insure the buildings for a sum equal to, or greater than, the unpaid balance. It allowed a fifteen day grace period for delinquent monthly payments. A default clause gave the vendor power to cancel the contract upon thirty days notice in case the vendees failed to make any payments or perform any of the covenants.

During the life of the contract, several payments were late. As of July 21, 1981, the vendees failed to make four payments. They did not pay the 1979 real estate taxes. In August 1981 the vendor received and deposited three checks representing late payments for June, July and August 1981. In September 1981 the vendees vacated the premises without notice to the vendor.[1] The vendor's uncle, Fred Heinzman, who lived nearby, concluded in early October that the premises had been abandoned and so informed the vendor; about a month later, the vendor returned from Texas. He padlocked the gate, locked the house, and procured a restraining order to prevent entry by the vendees.

On November 5, 1981, the vendees quitclaimed all their interest in the real estate to the bank. On November 17, 1981 the vendor mailed to the vendees a notice of default on the contract for deed stating his intention to terminate the contract. The vendor did not then know of the quitclaim deed which was filed on December 1, 1981.

■ On December 31, 1981, the vendor commenced a foreclosure action against the vendees and the bank. He later amended the complaint to add a cause of action to set aside the conveyance for fraud. The vendor claimed the conveyance was fraudulent because it attempted to hinder him from reclaiming the property. The trial court held that the assignment to the bank should not be set aside as a fraudulent conveyance since the bank took the assignment subject to the terms and conditions of the contract.

SDCL 54–8–3 provides: "A creditor can avoid the act or obligation of his debtor for fraud, only where the fraud obstructs the enforcement, by legal process, of his right to take the property affected by the transfer or obligation." Regardless of the motive behind the deed it could not affect the right of the vendor to foreclose the contract with the original vendees or their assigns. In *Orr v. Allen*, 73 S.D. 547, 552, 45 N.W.2d 737, 739 (1951), we said: "it is well settled that the assignee of a land contract takes it subject to all equities and defenses existing while it is in the hands of the assignor." This is consistent with authorities generally:

> Under the general rule that an assignee of a nonnegotiable chose in action ordinarily acquires no greater right than was possessed by his assignor, and takes subject to all equities and defenses which could have been set up against the chose in action in the hands of the assignor at the time of the assignment, it is held that an assignee of a purchaser of real estate takes subject to all the rights of the vendor under the original contract of sale, including all defenses thereto available to the vendor.

77 Am.Jur.2d Vendor and Purchaser § 389 (1975). The trial court correctly concluded that the allegations of fraud were therefore irrelevant and that a valid, assigned contract for deed existed.

■ Vendor's second claimed error concerns the trial court's determination that when the vendor accepted late payments without objection he waived the contract clause which provided "time of payment and performance shall be an essential part of this contract." It is settled law that estoppel may apply where late payments

---

1. The contract requires no such notice nor does it provide that the property be occupied.

are accepted more than once without objection. 77 Am.Jur.2d Vendor and Purchaser §§ 586, 589 (1975); *see Pier v. Lee*, 14 S.D. 600, 86 N.W. 642 (1901). In the early South Dakota case of *Keator v. Ferguson*, 20 S.D. 473, 477, 107 N.W. 678, 679 (1906), the vendor of real property similarly permitted late payments without objection. We concluded:

> It seems eminently just and equitable that a party who has neglected to enforce the provisions of his contract providing that time shall be of the essence of the contract at the time the default is made, and accepts performance of the terms thereafter should not be allowed upon a subsequent default to enforce the provision without giving the other party notice that he intends to enforce the same and a reasonable opportunity to comply with the terms of the contract.

*See also Spolek et al v. Hatch*, 21 S.D. 386, 113 N.W. 75 (1907); *Speer v. Phillips*, 24 S.D. 257, 123 N.W. 722 (1909). This rule was announced as settled law in *Moter v. Hershey*, 48 S.D. 493, 205 N.W. 239 (1925).

■ It is clear that the vendor accepted the late payments and allowed nonpayment of taxes without objection until he sent the notice of cancellation of the contract. The trial court was correct in concluding the vendor waived the contract provision that time of payment was essential.

■ The vendees were required under the contract to insure the buildings on the premises

> for a sum of at least equal to the unpaid principal balance of the Contract against fire, lightning, wind and extended coverage in a company or companies satisfactory to the [vendor], with loss payable as the interests of the parties shall appear.

It is undisputed that the vendees did not purchase the insurance. The court also found that the vendor made no demand that the purchasers insure the property or pay delinquent taxes.[2] It is not clear

whether the vendor knew vendees had failed to insure the premises; however, good business should have put him on inquiry when he failed to receive a copy or other evidence of a policy insuring his interest. The contract provided that he was to approve the insurer selected by the vendees. He should have become suspicious when no insurer was presented for his approval. We conclude therefore that the circuit court determination of waiver of the insurance claims was proper.

In a related issue, the parties dispute entitlement to insurance proceeds from a fire which destroyed one of the buildings. After the bank received the assignment it attempted to procure insurance but was unsuccessful because the vendor had locked the gate and the premises were unoccupied. The vendor then purchased fire and casualty insurance for the property and now seeks the proceeds from the fire which was caused by lightning.

■ The trial court held that the bank, as equitable owner of the property, sustained the loss and was thus entitled to the insurance proceeds. That is the proper manner for ultimate adjustment of the interests of the parties. However, the insurance proceeds from a policy purchased by the vendor do not flow to the vendees outright, but constitute a trust fund to be credited to the purchase price of the property for the benefit of the vendees. *New Hampshire Ins. Co. v. Vetter*, 326 N.W.2d 723 (S.D.1982); *Russell v. Elliott*, 45 S.D. 184, 186 N.W. 824 (1922) (featured at Annot., 22 A.L.R. 556 (1923)); 77 Am.Jur.2d Vendor and Purchaser § 371 (1975). The decision of the trial court regarding payment of the insurance proceeds is accordingly so modified.

Affirmed in part, modified in part.

WOLLMAN, DUNN and MORGAN, JJ., concur.

HENDERSON, J., concurs specially.

---

2. The vendor claims to have had no knowledge that the premises were uninsured until his Octo-
ber-November 1981 visit to South Dakota.

HENDERSON, Justice (specially concurring).

Appellant has no legitimate appeal. Theoretically, he is entitled to reclaim his property under the contract via strict foreclosure or payment under the contract. Per oral argument, it developed that appellant continued to receive all payments, with the possible exception of two, which were missing or unaccounted for. It appears appellant desires the fruits of the contract and also the property back. This cannot be. He cannot have both. Obviously, the conveyance has not obstructed or prejudiced his rights. *See* 37 C.J.S. *Fraudulent Conveyances* § 61 (1943).