Howard HEIKKILA, a/k/a Howard L. Heikkila, and Reino Heikkila, a/k/a Reino W. Heikkila, Plaintiffs and Appellees,

v.

Russell CARVER and Norma Carver, Defendants and Appellants.

No. 14795.

Supreme Court of South Dakota.

Argued May 21, 1985.

Decided Nov. 13, 1985.

Rehearing Denied Dec. 20, 1985.

James S. Nelson of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for plaintiffs and appellees.

John J. Delaney of Amundson & Fuller, Lead, for defendants and appellants.

FOSHEIM, Chief Justice.

This is an appeal by Russell and Norma Carver from a judgment decreeing the Carvers in default on a contract for deed. We affirm.

On January 2, 1979, Howard and Reino Heikkila sold their 5,920 acre Harding County ranch to Carvers on contract for deed. The contract fixed the purchase price at $592,000.00 allocating in part $394,900.00 for real estate, $75,000.00 for the house located on the property, and $50,000.00 for 10% of the Heikkilas' mineral interests. The contract reserved to the Heikkilas an undivided 90% interest, including future interests, in "all minerals of whatsoever nature," including the right to "prospect for, mine and/or drill for said minerals."

Under the terms of the contract, payment was to be made by the assumption of a $12,908.70 debt on a state land contract, a downpayment of $159,091.31 and annual installments of principal and interest in the amount of $41,202.00 beginning on January 3, 1980, and thereafter on the third day of January each year for nineteen years. The rate of interest stipulated in the contract was 7½%; however, upon default in making any payment, interest would accrue at a rate of 11% until the default was cured.

The contract also contained a default clause, which reads:

In the event the Buyers default in the performance of any of the terms, covenants, conditions or obligations imposed upon them by this agreement, the Parties agree that the Sellers shall have the option to declare all deferred balances immediately due and payable, subject to the following conditions.

If the Buyers fail to timely pay or breach any of the covenants or conditions or obligations imposed upon them then the Sellers shall give the Buyers sixty (60) days notice of such default during which time the Buyers may make such payment or correct the breach of any term, covenant, or conditions or obligation imposed upon them, making the contract current, but if such action is not taken by the Buyers during this sixty (60) day term, then the Sellers shall have the right to retake possession of the property described in Part III(A) and Part III(B) hereof, together with the duty on the part of the Buyers to assign back to the Sellers or their heirs or successors in interest all of their rights in the Contract for Sale with the State of South Dakota as set forth in Paragraph III or if the Contracts have been fully performed and patents been issued from the State of South Dakota to the Buyers then they shall execute deeds back to the Sellers.

In such event, the Sellers and the Buyers may, and do, agree that it

would be impractical or extremely difficult to fix actual damages in case of Buyers' default, and that all payments which have been made on and under the terms and conditions of this agreement by Buyers, or on their behalf by any other person shall be deemed liquidated damages, and is a reasonable estimate of damages and that Sellers shall retain said sum or sums as their sole right to damages for Buyers' default. All parties agree that in the event of any such default and the Buyers cause the reassignment of the Contracts for Sale from the State of South Dakota or a deed back on such property as hereinbefore set forth, then the remedies shall be limited to the retaking of the land under such foreclosure or other proceedings, however if the Buyers fail to reassign their interest in such Contracts for Deed or execute deeds back on said land, then such remedies shall not be exclusive and the Sellers may proceed under all of the terms of this contract and under such remedies as may be provided for under the laws of the State of South Dakota.

Carvers were delinquent in making their 1982 and 1983 payments. On each occasion, however, they tendered payment within the sixty-day grace period provided for in the contract.

In 1984, Carvers again failed to make their January 3 installment payment. On January 18, 1984, Heikkilas notified Carvers by mail of their intention to foreclose if payment was not made within the sixty-day grace period. Carvers, however, did not tender payment, and on March 23, 1984, Heikkilas brought suit for strict foreclosure of the contract.

At the time of default, Carvers had made payments on the contract to Heikkilas totaling $195,002.32 in principal and $124,-343.15 in interest.

Following a trial, judgment was entered in favor of Heikkilas, granting them strict foreclosure of the contract. The trial court further ordered that Carvers could redeem the ranch property upon payment to Heikk-

ilas within ninety days following entry of judgment of the total balance due and owing on the contract, including interest, in the amount of $448,901.52.

Carvers raise four issues on appeal, which we address in the order presented.

## I.

### *Liquidated Damages*

Carvers first contend that the default clause in the contract for deed is an unenforceable penalty.

Whether a forfeiture provision in a contract is an enforceable liquidated damage provision or an unenforceable penalty is a question of law for the trial court to determine "based upon a consideration of the instrument as a whole, the situation of the parties, the subject matter of the contract, the circumstances surrounding its execution, and other factors." *Prentice v. Classen*, 355 N.W.2d 352–55 (S.D.1984) (citing *Walter Motor Truck Co. v. State, etc.*, 292 N.W.2d 321, 323–24 (S.D.1980)). We have held that ordinarily such a provision will be upheld if (1) at the time the contract was made the damages in the event of breach were incapable or very difficult of accurate estimation, (2) there was a reasonable endeavor by the parties to fix compensation, and (3) the amount stipulated bears a reasonable relation to probable damages and is not disproportionate to any damages reasonably to be anticipated. *Prentice v. Classen, supra; Walter Motor Truck Co. v. State, etc., supra.*

The burden of establishing that the liquidated damage provision is an unlawful penalty rests with the party against whom enforcement is sought. *Prentice v. Classen, supra.*

Here, the trial court found that both Carvers and Heikkilas had retained competent legal counsel experienced in farm and ranch real estate sales; that at the time the contract was executed, damages in the event of default by Carvers were incapable or very difficult of accurate estimation, including the length of redemption period a

court might set, the risk of overgrazing or other waste before or during the redemption period, other possible damage to the property, unknown future market value of the property, projected rental value of the ranch, and the potential loss of royalty income should the buyer interfere with mineral development. The court also found that the parties had used reasonable efforts in trying to estimate damages but were unable to do so, and that the default provision itself was the best evidence of the parties' efforts and intentions at the time of sale.

In addition, the record discloses that Russell Carver, who was experienced in real estate transactions of this nature, reviewed the contract for deed with his attorney prior to signing it. Indeed, Carvers' attorney testified that it was his practice to review real estate agreements with his clients on a "paragraph by paragraph" basis. Carvers also negotiated several changes in the contract, including an extension of the grace period in the default clause from thirty to sixty days. There is no evidence in the record of overreaching or unfairness on the part of Heikkilas or their attorney. In short, the record supports the finding that the parties bargained at arms-length over the contract for deed, including the default clause.

Based upon these considerations, we cannot say that the trial court clearly erred in finding that the parties were unable at the time the contract was made to determine prospectively what damages might arise in the event of breach by the vendee.

Nevertheless, a court may decline to enforce a forfeiture clause if the defaulting vendee establishes by clear evidence that a substantial disparity exists between the payments made on the contract, together with the improvements made to the property, and the loss of rents and other detriment suffered by the vendors due to the loss of use and possession of the property. *Prentice v. Classen, supra.* See SDCL 21-50-2.

The trial court found that at the time of default, Carvers had paid approximately one-third of the contract price and "had received and continue[d] to receive the benefits of the use of the land together with 10% of the mineral royalties." In contrast, the trial court determined that Heikkilas had sustained damages in excess of $500,000.00 as a result of Carvers' breach as well as Heikkilas' lost use and possession of the land. This finding was predicated on the testimony of Reino Heikkila which was offered in support of the following exhibit prepared by Heikkilas:

HEIKKILA DAMAGES, EXPENSES AND COSTS AS RESULT
OF SALE AND BREACH OF CONTRACT

1. Loss of rental value of the ranch for five and one half years ($36,000.00 per year) — $198,000.00
2. Loss of natural gas royalties (10% sold to Carver) — 50,000.00
3. Loss of timber sales — 14,000.00
4. Real estate commission fees — 22,000.00
5. Abstract and attorney's fees for sale — 2,006.00
6. Loss of sale of gravel — 10,683.00
7. Loss of payment offered by Jerry McCutchin for surface damages — 28,500.00
8. Attorney's fees, taxes and costs for arbitration dispute and contract foreclosure (estimated) (LaFleur—$2,474.00) — 10,474.00
9. Expense for car, gasoline, miles and meals for travel to Rapid City and Deadwood concerning arbitration and contract foreclosure through July 17, 1984, and July 31, 1984 — 975.00
10. Loss of development of oil wells by Inland Oil — ____
11. Loss of resale value of the ranch due to change in market conditions and reduction of average price per acre of $100.00 to $80.00 ($5,920.00 × 20) — 118,400.00

| | | |
|---|---|---|
| 12. | Loss of wages from McCutchin for inspection of wells on the property for the last five and one half years (15 wells × $125.00 per = $1,875.00 per month × 66 months − $123,750.00) | 123,750.00 |
| 13. | Mental anguish and inconvenience concerning surface damage claims and breach of the contract. | 10,000.00 |
| | TOTAL | $588,788.00 |

We conclude, upon a careful examination of the record, that several of Heikkilas' damage claims should have been disregarded by the trial court on the ground that they were either too speculative or simply unfounded, including: (2) lost natural gas royalties; (3) lost timber sales; (6) lost gravel sales; (7) lost payment for surface damages; (9) travel expenses; (12) lost wages; (13) mental anguish and inconvenience. Notwithstanding that the aforementioned items should have been disallowed by the trial court, there is still no clear evidence in the record of a substantial disparity between the relative detriment sustained by the parties.

Accordingly, we conclude that the trial court did not err in holding as a matter of law that the default clause in the contract for deed was not a penalty pursuant to SDCL 53-9-5.

## II.

### Reinstatement of the Contract

Carvers next contend that the trial court should have reinstated the contract under its equitable powers.

Carvers first tendered their 1984 installment payment to Heikkilas on March 29, 1984, six days after Heikkilas commenced this action to foreclose on the contract. The sixty-day grace period had expired on March 18, 1984.

Carvers claim they withheld payment pending a response to their formal demand of Heikkilas, made by letter on March 5, 1984, to pay or arbitrate damages allegedly caused to the ranch property by ongoing mineral development. Carvers' March 5 demand was made pursuant to an arbitration clause in the contract that specified that "[s]ellers, heirs, etc., and/or mineral lessee shall pay the amount of the physical damage, to be determined by arbitration in the event of disagreement, to the real property or improvements caused by Sellers' said operations." The trial court, however, declined to reinstate the contract, finding that:

Defendants never officially requested arbitration of a mineral related damage claim until after their default; that, notwithstanding Defendants' default under the Contract, Plaintiffs have agreed to arbitrate any such claims, and such claims are the subject of a separate arbitration hearing; that Plaintiffs' failure to submit to arbitration before formal demand for same does not amount to either a legal or equitable defense for non-payment of the purchase price under the facts; that any damages assessed by arbitration against the Plaintiffs are irrelevant to this foreclosure action and any such damages, if any, will be paid separately by the Plaintiffs to the Defendants as a result of a subsequent arbitration hearing.

■ We agree with the trial court. Carvers' March 5 demand for arbitration did not empower them to unilaterally suspend their obligation to perform within the terms of the contract.

The parties had expressly agreed that time was of the essence in the performance of this contract. Moreover, Carvers were on notice of Heikkilas' intention to insist upon strict compliance with the terms of the contract. When Carvers were delinquent in making their 1982 and 1983 payments, Heikkilas, as in 1984, gave notice of default with intention to foreclose if payment was not made within the sixty-day grace period.

Most courts agree that time may be expressly made of the essence of the

contract, and where this is done it is binding on the parties not only at law but in equity as well. A court of equity is not at liberty to disregard the contract of the parties in this respect where deliberately made and clearly expressed, for equity follows the law and will neither make a new contract for the parties nor violate that into which they have freely and advisedly entered. Therefore, as regards the vendor's right to enforce the contract, the time for the delivery of the deed may be made of the essence of the contract, and the time for the payment of the purchase money, if expressly made of the essence of the contract, is so recognized in a court of equity, and compliance therewith may be made essential to the right of the purchaser to compel the vendor to convey, and where such is the case a court of equity will not, as a general rule, interfere to relieve the purchaser from the consequences of his default.

*Jesz v. Geigle*, 319 N.W.2d 481, 483 (N.D. 1982) (quoting 77 Am.Jur.2d, *Vendor and Purchaser* § 73 (1975)).

## III.

### *Restitution*

Carvers maintain that even if foreclosure is warranted, the trial court erred in not allowing restitution to the extent that improvements and payments made exceed the damages suffered by Heikkilas.

██ Carvers, however, did not present this claim to the trial court. Where the trial court has determined that enforcement of the liquidated damage provision would not be unconscionable, the defaulting vendee bears the burden of proving that the vendor would be unjustly enriched by retention of all payments made on the contract. *Vines v. Orchard Hills, Inc.*, 181 Conn. 501, 510–12, 435 A.2d 1022, 1028 (1980); Clark & Richards, "Installment Land Contracts in South Dakota—Part II," 7 S.D.L.Rev. 44, 63 (1962). *See generally, Prentice v. Classen, supra.* In *Vines, supra,* the Connecticut Supreme Court stated:

The purchaser's right to recover in restitution requires the purchaser to establish that the seller has been unjustly enriched. The purchaser must show more than that the contract has come to an end and that the seller retains moneys paid pursuant to the contract. To prove unjust enrichment, in the ordinary case, the purchaser, because he is the party in breach, must prove that the damages suffered by his seller are less than the moneys received from the purchaser. It may not be easy for the purchaser to prove the extent of the seller's damages, it may even be strategically advantageous for the seller to come forward with relevant evidence of the losses he has incurred and may expect to incur on account of the buyer's breach. Nonetheless, only if the breaching party satisfies his burden of proof that the innocent party has sustained a net gain may a claim for unjust enrichment be sustained. Dobbs, *Remedies* § 12.14 (1973); 1 Palmer, *Restitution* § 5.4 (1978).

*Id.,* 435 A.2d at 1027–1028.

██ The trial court may order restitution to the defaulting vendee by virtue of its powers to equitably adjust the rights of the party in a foreclosure action. *See* SDCL 21–50–2. This does not, however, relieve the vendee of his burden of proving that he is so entitled. It is only on appeal that the Carvers raise the claim that they are entitled to restitution. We have repeatedly said that an issue may not be raised for the first time on appeal.

Carvers failed to claim a right to restitution below and presented no evidence to the trial court from which such determination could be made. We note that Carvers did present evidence to the trial court of improvements made to the property totaling approximately $79,000.00 of which approximately $16,000.00 was insurance proceeds which was left over after Carvers had built a home on the ranch property to replace the one that had burned down shortly after they had taken possession of the property. This evidence, however, was not offered by

Carvers pursuant to a claim for restitution. Rather, this evidence was received by the trial court in considering the relative equities of the party so as to determine whether the enforcement of the default clause would be unconscionable under the circumstances.

Thus, we cannot hold that the trial court erred in not awarding restitution inasmuch as restitution was not requested at trial nor was sufficient evidence presented to the court from which it could, upon its own accord, award restitution.

## IV.

### *Redemption*

■ Carvers' final argument is that the trial court abused its discretion in establishing a ninety-day redemption period. We disagree.

This action was tried on July 17 and July 31, 1984. The parties first learned of the trial court's decision on September 12, 1984, when the trial court entered its memorandum opinion, which stated that the redemption period would expire on December 31, 1984. Notice of entry of judgment was filed on October 23, 1984, at which time the trial court ordered that the redemption period would expire ninety days later, on or about January 23, 1985. Hence Carvers were in effect allowed a redemption period of 131 days. Under these circumstances, we cannot say that the redemption period set by the court was unreasonable or unfair.

MORGAN, J., and WUEST, Circuit Judge, acting as a Supreme Court Justice, concur.

HENDERSON, J., dissents.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, not participating.

HENDERSON, Justice (dissenting).

I respectfully dissent as the equities do not justify enforcement of a forfeiture provision. An old maxim of equity proclaims "Equity abhors a forfeiture." I dare say this case, precedentially, so far as contracts for deed and agriculture are concerned, is one of the most important cases in this Court's history.

In addition to the $319,345.47 buyers paid sellers, buyers improved the ranch property by at least $80,000 consisting of improving cropland, improving the timber stand, constructing four new wells, improving outbuildings and corrals, and furnishing the included item of extensive labor. These improvements are not essentially in dispute. Therefore, in five years the buyers poured and contributed approximately $400,000 into this ranch. Buyers tendered delayed installment, including principal and interest in full, just 11 days late! Under the decision of the trial court, now affirmed by this Court, the buyers lose everything, the sellers keep the $400,000, and sellers are reinvested with the entire ranch—much improved. This is too hardball for me to swallow in an equitable action. It is an unconscionable foreclosure. It goes against the spirit and grain of Prentice v. Classen, cited in the majority, and SDCL 21–50–2 and 21–50–3. Under SDCL 21–50–2, a statute under Foreclosure of Real Estate Contracts, "[t]he court in such actions shall have the power to equitably adjust the rights of all the parties thereto ...." The time contemplated by SDCL 21–50–3 is to enable a defendant to comply with the contract. *Scott v. Hetland*, 51 S.D. 303, 213 N.W. 732 (1927). In *Walsh v. Bellamy*, 68 S.D. 291, 295, 2 N.W.2d 102, 104 (1942), we held: "A vendee under the terms of the statute is allowed a reasonable opportunity to comply with the terms of the contract, and a failure to tender performance before suit would not affect the merits. It would only involve a question of costs." Buyers in this action were laboring under an immediate demand to forthwith pay almost one-half million dollars. Then, as litigation and time wore on, buyers who therebefore were in a never-never land concerning their rights (litigation outcome unknown, offsetting claim of buyers up in the air as sellers, although admitting they were obligated to pay buyers for physical damages to property, would not assist in helping buyers recover from the major develop-

er) * were granted by decision of the trial court a 90–day redemption period within which to pay almost one-half million dollars. This was not remedial justice for it was not a realistic time payment schedule. Everyone in America knows that the ranching and farming industries are deeply in trouble. In South Dakota, bankruptcies in agriculture have dramatically increased. In 1982, 129 agricultural bankruptcies were filed in South Dakota. In 1983, this number increased to 189 and in 1984, it rose to 245. In 1985, as of October 31, agricultural bankruptcy filings in this state were at 279. This is a 116% increase in less than four full years. I take judicial notice of the official records of the United States Bankruptcy Court, District of South Dakota. I fully appreciate that what is reasonable to one's viewpoint—is unreasonable to another. One of the first things we learn in law school is that reasonable men differ. To me, it is unreasonable to refuse a full payment when it is 11 days late and to then sue for and demand forthwith one-half million dollars; then, if the half million dollars is not paid, to cause the offering party to lose a $400,000 equity. I support this common sense approach by 2 Pomeroy, *A Treatise on Equity Jurisprudence*, § 433, at 206–07 (5th ed. 1941), wherein it is expressed:

> The test which determines whether equity will or will not interfere in such cases is the fact whether compensation can or cannot be adequately made for a breach of the obligation which is thus secured. *If the penalty is to secure the mere payment of money, compensation can always be made, and a court of equity will relieve the debtor party upon his paying the principal and interest....* [The granting of relief in such circumstances is based on the ground that it is wholly against conscience to say that because a man has stipulated for a penalty in case of his omission to do a particular act—the real object of the parties being the performance of the act—if he omits to do the act, he shall suffer a loss which is wholly disproportionate to the injury sustained by the other party.] (Emphasis supplied mine; brackets in original.)

Very recently, in *Booth v. Chamales*, 366 N.W.2d 843 (S.D.1985), we affirmed a circuit court's denial of a real estate foreclosure. For seven years, the buyers in *Booth* were habitually late with their payments. Yet, sellers accepted these payments. Buyers took sellers to the courtroom door on a foreclosure action, and on the day before trial, buyers owed four years of delinquent taxes. Sellers in *Booth* accepted a tardy payment on the contract after strict foreclosure documents were served. Here, Heikkilas (sellers) refused a yearly payment from Carvers (buyers) before the action was instituted but the full payment was tendered just 11 days late. On the day of trial in the *Booth* case, all payments and taxes were current. In discussing the foreclosure action in *Booth*, the trial court relied on our recent decision in *Heinzman v. Howard*, 348 N.W.2d 147 (S.D.1984). We upheld the trial court's action observing that the trial court has the power to equitably adjust the rights of all parties and to fix the time within which the party or parties in default must comply with the terms of such contract. As in *Booth*, the buyers here were late on several payments and payments were accepted nonetheless. Although paragraph XVIII of the Contract for Deed stated that time was of the essence, a party who neglects to enforce such a provision at default and later accepts performance, shall not be allowed upon subsequent default to enforce such a provision without notifying the other party of his intent to enforce it. *Keator v. Ferguson*, 20 S.D. 473, 477, 107 N.W.

---

\* Mineral developers greatly increased natural gas drilling on this ranch; the water supply deteriorated in quantity and quality; one stock pond was ruined by dumping contaminated drilling mud into it; natural gas began to appear in the well water; some of the water contained enough gas to burn; buyers felt harassed and delayed payment pending a response to a formal demand for damages submitted to sellers; sellers did not respond to an arbitration demand and saw fit to serve a foreclosure action on March 23, 1984. Must justice be administered in halves?

678, 679 (1906). *See also, Heinzman,* 348 N.W.2d 147; *Moter v. Hershey,* 48 S.D. 493, 205 N.W. 239 (1925); *Speer v. Phillips,* 24 S.D. 257, 123 N.W. 722 (1909); *Spolek v. Hatch,* 21 S.D. 386, 113 N.W. 75 (1907); *Pier v. Lee,* 14 S.D. 600, 86 N.W. 642 (1901); and 77 Am.Jur.2d *Vendor and Purchaser* §§ 586, 589 (1975). If the parties do not treat timely payment as being of the essence, the courts should not treat it as of the essence. We do now approve of this hardball approach taken by the sellers in this case and, without question, the buyers in this case paid far more money and were in less serious default than the buyers in *Booth.* There are different colors and hues in flowers; there are different degrees of sin; there are different degrees of breach of contract. Some breaches of contract are indeed most serious and substantial and some are not. There are often subtle gradations. However, the 11–day full, but late, tender is not such a serious and substantial breach that it deserves a total elimination of all equity in this ranch of the buyers. I perceive this forfeiture as being unconscionable. If the same penalty applies to all breaches, that is, total forfeiture, it is inversely proportional to the degree of breach. For, in some cases the facts demonstrate on contracts for deeds, that there has been a rather long and faithful performance. It is our duty on the highest Court of this state to equate and evaluate various decisions in the trial courts of this state. The judiciary, although indeed it must protect the buyers, must likewise protect the sellers from unfair consequences. Predictability must flow with equity begotten. It strikes me that an inconsistency in the fair administration of justice doth here lie.

The facts here do not militate all for the sellers and against the buyers. As an example, the contract in question specifically sets out the damage for late payments—a change in the interest rate from 7½% to 11%. Interest is normally considered to be the damage for late or nonpayment of money. *Utley v. Dunning,* 38 S.D. 447, 161 N.W. 813 (1917). Finding of Fact 15, which pertains to the parties' efforts to estimate damages, does not appear to have support in the record. Rather, it is my belief that the parties' testimony, supported by their counsel, reflects that no efforts were specifically given to this subject. It further appears to me that boilerplate language was placed in the contract and was certainly not the words of the parties. In fact, it is undisputed that the parties themselves never discussed damages, arising from either a minor or major breach. Counsel who drew the contract testified that he had used prior contracts in inserting the forfeiture clause and specifically disclaimed any recollections of discussions as to why the clause was inserted as written. This attorney testified that he drew the contract to comport with statutory language of the South Dakota Code. Both attorneys, involved in preparing this contract, denied any discussions concerning damages which the sellers would sustain by virtue of a breach. Therefore, the three-fold test articulated in *Prentice* and *Anderson v. Cactus Heights Country Club,* 80 S.D. 417, 125 N.W.2d 491 (1963), has not been met. True, the trial court's Findings of Fact 14, 15, and 16 purport to address these items.

He who seeks equity must do equity, we are taught as fledgling law students. Sellers seek the entire equitable interests of buyers, yet they do no equity; in late 1983, while admitting damages caused to the ranch, sellers refused an oral demand to arbitrate or pay damages. This was as late as December 1983. On January 3, 1984, buyers did not make the yearly payment; by January 18, 1984, sellers had served a notice of default. Not once did the sellers respond to the arbitration demand; buyers withheld the yearly payment. When buyers did tender the full amount of principal and interest to the escrow bank, said bank returned the installment payment per instructions from the sellers. Sellers were going for the jugular vein.

As I truly believe this trial court entered findings of fact which were clearly erroneous and has abused its broad discretionary power granted unto it by the state statutes

on strict foreclosures of real estate con-
tracts, I would reverse and remand. This
would encompass instructions to reinstate
the contract upon payment of all past-due
installments, interest, and any attendant
expense incurred by the 11–day tardy pay-
ment, duly tendered but refused.