**WALTER MOTOR TRUCK COMPANY, a corporation, Plaintiff and Appellee,**

v.

**The STATE of South Dakota acting By and Through its DEPARTMENT OF TRANSPORTATION, Manley Feinstein, Tom Schlachter, Jerry Shoener, Robert Osborn, and James Doyle, as members of the South Dakota Board of Transportation, and the South Dakota Division of Aeronautics, Keith Montgomery, Don DeVries, William Mechaley, Paul Hartung, and Raymond Liebsch, as members of the South Dakota Aeronautics Commission, and Monte R. Schneider, as Director of Aeronautics, Defendants and Appellants.**

No. 12626.

Supreme Court of South Dakota.

Submitted on Briefs Nov. 16, 1979.

Decided May 21, 1980.

Rehearing Denied June 11, 1980.

David A. Gerdes of May, Adam, Gerdes & Thompson, Pierre, for plaintiff and appellee.

Carl W. Quist, Asst. Atty. Gen., Pierre, for defendants and appellants; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

FOSHEIM, Justice.

This is an appeal from a judgment in favor of the plaintiff in the sum of $63,-950.00 for payment withheld on a contract to supply crash, fire and rescue equipment to various South Dakota airports. We reverse.

The South Dakota Department of Transportation, Division of Aeronautics, acting as contracting agent for the several cities served by commercial air carriers, assessed the above amount against the plaintiff pursuant to a provision in the contract which reads as follows:

*LIQUIDATED DAMAGES.* In the event the Contractor fails to deliver the trucks and equipment to the respective airport locations specified in the bid proposal, in accordance with the time of delivery set forth in the bid proposal, the contractor shall be assessed liquidated damages in the amount of $50.00 per calendar day per truck for each calendar day beyond the stipulated delivery day.

The trial court held the assessment was a void penalty in violation of SDCL 53–9–5, which provides:

Every contract in which amount of damage or compensation for breach of an obligation is determined in anticipation thereof is void to that extent except the parties may agree therein upon an amount, presumed to be the damage for breach in cases where it would be impracticable or extremely difficult to fix actual damage.

The defendants contend that the challenged provision is a valid expression of liquidated damages.

The crash, fire and rescue equipment to be furnished under this contract was a new requirement of federal aviation regulations; federal deadlines for utilization of this equipment had already passed when the Division of Aeronautics let the bids. If the

Federal Aviation Administration (FAA) continued to grant waivers, no damages could have resulted from late delivery, assuming no disasters occurred in the intervening period. If the FAA had refused to grant further waivers, however, it would have been necessary for each city to refit its municipal fire trucks and have them standing by during every takeoff and landing of common carrier aircraft. Accordingly, actual damages, if any, were controlled to a great extent by FAA decisions. There was no assurance what those decisions might be when the contract was executed.

■■■ A person having the right to a promised performance is entitled, if it is not forthcoming when due, to damages in an amount which will compensate him for the detriment caused thereby. SDCL 21–2–1. A provision for payment of a stipulated sum as a liquidation of damages will ordinarily be sustained if it appears (1) that at the time the contract was made the damages in the event of a breach were incapable or very difficult of accurate estimation; (2) that there was a reasonable endeavor by the parties as stated to fix fair compensation; and (3) that the amount stipulated bears a reasonable relation to probable damages and is not disproportionate to any damages reasonably to be anticipated. *Anderson v. Cactus Heights Country Club*, 80 S.D. 417, 125 N.W.2d 491 (1963). In determining whether a stipulation in a contract for liquidated damages is void as not coming within the statutory exception in SDCL 53–9–5, the language of the parties used in characterizing the damages fixed is entitled to some weight, although it is not controlling. *First Loan & Trust Co. v. Schanche*, 48 S.D. 86, 202 N.W. 390 (1925); *Harden v. Richards*, 41 S.D. 415, 171 N.W. 89 (1919); *Utley v. Dunning*, 38 S.D. 447, 161 N.W. 813 (1917). It must, however, be accepted until it is shown that the provision is for a penalty. 25 C.J.S. Damages §. 105 (1966). In *Dave Gustafson & Co. v. State*, 83 S.D. 160, 156 N.W.2d 185 (1968), we recognized the modern tendency not to look with disfavor upon liquidated damage provisions in contracts, because they serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable, as is the case in many government contracts. We also noted that they are not against public policy as an appropriate means of inducing due performance, or of providing compensation, in case of failure to perform. See also: Williston on Contracts, Vol. 5, 3d Ed. § 788, page 760.

■ It appears that the delays in performance on the part of the plaintiff were largely caused by unexpected shortages, and the evidence shows no actual damages sustained by the defendant. The effect of a clause for stipulated damages in a contract is to substitute the amount agreed upon as liquidated damages for the actual damages resulting from breach of the contract, and thereby prevent a controversy between the parties as to the amount of damages. If a provision is construed to be one for liquidated damages, the sum stipulated forms, in general, the measure of damages in case of a breach, and the recovery must be for that amount. No larger or smaller sum can be awarded even though the actual loss may be greater or less. In such case, evidence of the actual loss or harm suffered is irrelevant. *Dave Gustafson & Co. v. State*, supra; 22 Am.Jur.2d Damages § 235 (1965).

*Gustafson* expressly overruled that portion of *Fitzgerald v. City of Huron*, 47 S.D. 533, 199 N.W. 775 (1924), which held that where a delay was not caused by any fault or negligence of the contractor, a "$50.00 per day" provision was void. It also departed from other earlier decisions that measured the reasonableness of stipulated damages by whether they provided a fair compensation for the actual loss incurred by the injured party and, insofar as they exceeded such fair compensation, they were not recoverable. *Cf., International Milling Co. v. Reierson*, 55 S.D. 139, 225 N.W. 218 (1929); *Barnes v. Clement*, 12 S.D. 270, 81 N.W. 301 (1899).

■■ Whether the stipulated sum is an unenforceable penalty or an enforceable provision for liquidated damages is a question of law for the court to determine.

*Anderson v. Cactus Heights Country Club,* supra. That determination must ultimately be made from a consideration of the instrument as a whole, the situation of the parties, the subject matter of the contract, the circumstances surrounding its execution, and other factors. 25 C.J.S. Damages § 103 (1966); see Annot., 6 A.L.R.2d 1401 (1949).

It is conceded, and the trial court held, that at the time the contract was made, the damages in the event of a breach were incapable or very difficult of accurate estimation. With reference to the remaining tests, the evidence shows that in the absence of any set guidelines available for determining a liquidated damage fee for fire trucks, the liquidated damage schedules for other public contracts were considered together with the requirement that the equipment be obtained to retain the certification necessary for the airlines to operate from the airport. Consideration was also given to the safety of passengers, as well as possible liability to the airport owners in the event of an accident prior to delivery. Each unit was considered separately, as the individual airports were to have independent grants and were required to meet certification requirements on their own merits. The $50.00 per truck per day rate was proportionate to the damage each city would encounter in providing standby equipment if the plaintiff was tardy in delivering the equipment.

A review of the negotiations at the time the contract was entered into indicates that the parties endeavored to fix a fair compensation in light of the problem the air carrier airports would encounter if no further extensions were granted by the FAA, and that they followed acceptable criteria as expressed in *Dave Gustafson & Co. v. State,* supra, and *Anderson v. Cactus Heights Country Club,* supra. Since we are unable to determine that the stipulated damages are so disproportionate to the amount of any damage reasonably to have been contemplated when the contract was executed as to be oppressive, we cannot say the liquidated damage provision was intended to be other than what the parties said it was.

*Gustafson,* supra; 25 C.J.S. Damages, § 105 (1966).

In view of this conclusion, it is unnecessary to consider the remaining assignments of error urged by appellants.

The judgment is reversed.

WOLLMAN, C. J., and DUNN, J., concur.

MORGAN and HENDERSON, JJ., dissent.

MORGAN, Justice (dissenting).

I dissent.

While the issue of liquidated damages versus penalty is a question of law for the court to decide, it must be supported by adequate findings of fact. The trial court heard the evidence and entered findings of fact which supported its conclusion that the claim was a penalty. Its findings are supported by substantial evidence. I would affirm the trial court.

The majority opinion relies heavily on *Dave Gustafson & Co. v. State,* 83 S.D. 160, 156 N.W.2d 185 (1968). I quote from a portion thereof, which cites *Anderson v. Cactus Heights Country Club,* 80 S.D. 417, 125 N.W.2d 491 (1963):

"[T]hat the amount stipulated bears a reasonable relation to probable damages and not disproportionate *to any damages reasonably to be anticipated.*"

83 S.D. at 166, 156 N.W.2d at 188 (emphasis added). The present contract was conceived in procrastination and delay not of the bidders doing. The Congressional Act which provided the basis for approximately eighty-two percent participation of federal funding was passed in 1970 and originally had a May 1973 deadline for compliance. This was extended to May 1974 by the FAA, yet the state, acting as agent for the cities involved, did not even invite bids until February of 1974. No reason or explanation for this unseemly delay is apparent in the record. The bid proposal, by its own terms, acknowledged that a further extension of the deadline for compliance would have to be obtained from the FAA by the cities since the contracts could not even be

let until the 1974 deadline had come and gone. Clearly the state anticipated no problem in getting that requisite extension.

According to our long-standing standard of review, we cannot overturn the findings of the trial court unless they are clearly erroneous. *Cunningham v. Yankton Clinic, P.A.*, 262 N.W.2d 508 (S.D.1978). I would decide the appeal solely on the issue of non-anticipation of damages. Contrary to what the majority says, the record discloses that there were no negotiations as to the damage amount. The figure was in the bid form prepared by the state and taken from previous highway construction contracts and FAA guidelines for runway construction contracts, a type of contract entirely unrelated to the contracts in question. The trial court in its Finding of Fact No. 8 found:

> Furthermore, the $50 per truck per day figure does not appear to bear a reasonable relation to probable damages which might occur, as it depended upon whether the FAA would require immediate compliance or issue waivers. . . . In the latter, where the FAA would issue waivers, damages would be minimal or nonexistent. Defendants did not consider these facts in arriving at the $50 per truck per day figure.

Upon this finding the trial court based its Conclusion of Law No. 2, which, in pertinent part, stated:

> The so-called liquidated damages clause in the contract between the parties is a penalty in that . . . said amount is disproportionate to any damages which might be reasonably anticipated.

I would affirm the trial court's judgment because I do not perceive that in the fact situation in this case any damage whatsoever was reasonably to be anticipated. That was the trial court's conclusion and in my opinion it was based on solid findings of fact.

HENDERSON, Justice (dissenting).

I dissent and would affirm the trial court upon the basis that the trial court justly found the clause in question to be a penalty.

Shortly after the submission by plaintiff of its bid on March 4, 1974, and continuing through the time of the contract, unanticipated and serious material shortages developed in the entire national economy, and particularly in the automotive and heavy equipment industries which made it impossible for plaintiff to timely deliver the airport crash, fire and rescue trucks as required in the contract.

The trial court found that it was uncontroverted that the reasons for the delay in performing the contract were beyond the control of the plaintiff. Those reasons indicated:

> (1) A reduction in the production of Rockwell axles for light rescue crash trucks;
> (2) Inability to obtain dry chemical systems due to shortages of foundry components for a period of three months;
> (3) A fire at the foundry producing Hale pumps which cut production by 50%; and
> (4) A number of spot shortages of a more minor nature.

The facts establish that these shortages could not have reasonably been foreseen by the plaintiff at the time of the contract documents, due to the then prevailing economic conditions.

South Dakota was in trouble meeting the federal deadline when the bids were let. The parties knew that an additional extension of time would be necessary and the federal government would grant it. In fact, South Dakota had already received one extension of time from the original deadline of May 1, 1973, to May 1, 1974. Bids were not requested until January or February of 1974.

It is important to note, when considering damages, that no airports were closed down due to respondent's inability to produce firetrucks; no persons complained about the airports failing to have crash trucks; no carrier refused to land or complained about the lack of crash equipment; and all cities were able to receive waivers or extensions of time for compliance from the federal government. In essence, there were no

damages. Defendants contend that stipulated damages may be recovered in the event of a breach even though no actual damage occurs. This presupposes that the clause qualifies as a liquidated damage clause.

This lawsuit arose because of the fact that the Division of Aeronautics, heeding its counsel's advice, expressed that it could not legally extend the time for performance and could not modify the contract to exonerate appellant from the penalty clause. The trial court disagreed and rightly so. As stated in 64 Am.Jur.2d Public Works and Contracts § 108 (1972):

> Although parties to a contract for public work may agree that time shall be of the essence of their contract, and, if proper legal conditions exist, may stipulate for damages and the measure of them, they may subsequently change their views and requirements and consider that performance within the stipulated time is unimportant. The prescribed date for the completion of the public contract may be waived by the public authorities. Either or both parties may waive a breach of the terms of the contract and have and allow a performance thereafter. A waiver of the time limit for performance releases any claim to damages for the delay.

I do not agree that there was a reasonable endeavor by the parties to fix fair compensation. The real purpose of the penalty clause was to insure prompt delivery of the safety equipment. Compensation was never contemplated; it was not within the realm of the parties' thoughts or their dealings. Damages were not contemplated since it was reasonably assured that F.A.A. waivers would be procured to cure any late delivery of equipment.

Under the circumstances here, I cannot agree that the amount stipulated bore a reasonable relation to probable damages. The amount stipulated, $50 per day per truck, was disproportionate to damages supposedly to be anticipated. The only resultant damage or hypothesis of inconvenience is: that if the crash trucks were not delivered on schedule, the airports would somehow be deprived of equipment or services which were previously unavailable to them. Damages, therefore, were a legal phantom. We are not here legally trafficking with essential highways or runways that adversely and vitally affect the public interest. Cf. Dave Gustafson & Co. v. State, 83 S.D. 160, 156 N.W.2d 185 (1968). The United States Supreme Court has held that a contract provision for liquidated damages in case of a breach which can produce no possible damages is, in fact, a penalty and therefore, unenforceable. Priebe & Sons, Inc. v. United States, 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32 (1947).

A $63,950 judgment is being taken from the plaintiff without fault on its part. A technical construction takes the fruits of labor without recompense.