**SAFARI, INC., A South Dakota Corporation, Plaintiff and Appellant,**

v.

**Frederick VERDOORN and Colleen Verdoorn, husband and wife, Defendants and Appellees.**

No. 16332.

Supreme Court of South Dakota.

Considered on briefs April 26, 1989.

Reassigned July 26, 1989.

Decided Sept. 6, 1989.

Thomas L. Fiegen of McCann, Martin & McCann, Brookings, for plaintiff and appellant.

Alan Glover of Denholm, Glover & Britzman, Brookings, for defendants and appellees.

MILLER, Justice (on reassignment).

In this appeal, we affirm the trial court and hold that the forfeiture provision contained within a contract for sale is void as a matter of law and that the trial court appropriately awarded damages and restitution.

### FACTS

In 1972, Dimitrios and Karen Theodosopoulos (Sellers) purchased a bar/lounge and incorporated it as Safari, Inc. (Safari). In March of 1985, a fire in an adjoining business, caused extensive smoke and water damage to the bar. Sellers substantially remodeled it and reopened it in June, 1985. Following the renovation, Sellers decided to sell the bar, including the real estate. They listed it at a price in excess of $400,000. They did not receive any serious offers until February, 1986, when Frederick ,and Colleen Verdoorn (Buyers)

began to negotiate with Sellers to purchase the business. Colleen Verdoorn was employed by Safari at the time.

The parties originally agreed to a price of $275,000 (this price included the business and the real estate), with $75,000 down. After Buyers could only raise $50,000, the parties agreed to split the transaction by selling the real estate and business separately. They agreed on a price of $175,000 for the business.[1] Payment terms were a $50,000 down payment, with the balance of $125,000, including ten percent interest, to be paid in the amount of $2,000 per month commencing May 1, 1986. Buyers leased the real estate separately for $1,000 per month, with an option to purchase. Sale and lease agreements consistent with these terms were prepared and executed. Both parties were represented by legal counsel with whom they reviewed and discussed the terms of the agreements.

Paragraph IV of the sales agreement contained a forfeiture and liquidated damages provision, which provided:

It is further understood and agreed by and between the parties hereto that thirty (30) days is a reasonable and sufficient notice to be given to said Buyers in case of Buyers' failure to make said monthly payments, or any part thereof, shall be sufficient to cancel all obligations on the part of the seller and fully reinvest it with all right, title and interest hereby agreed to be conveyed, and Buyers shall forfeit all payments made by them pursuant to this agreement, and their right, title and interest in all the equipment, leasehold improvements and goodwill and any or all other improvements to said premises whatsoever, shall be retained by sellers in full satisfaction of liquidation of all damages by them sustained, and they shall have the right to reenter and take possession of premises aforesaid.

Buyers took possession of the bar on April 1, 1986. They made immediate changes to attract a different, younger clientele. Gross sales fell substantially. The trial court found this was partially due to Buyers' management. As a result, Buyers were able only to make the May payment under the sales agreement and the April, May, and June payments under the lease agreement. Buyers voluntarily relinquished possession of the business in July, 1986. Upon retaking possession, Sellers spent substantial time, effort, and expense to prepare the business for reopening. It took several months for the business to operate profitably, at which time Sellers relisted it for sale.

Sellers, via Safari, brought an action against Buyers for specific performance or, in the alternative, an order restoring all interests in the property to Safari. The trial court entered an order restoring all interests in Safari. The court did not permit Safari to retain the $50,000 downpayment and the $2,000 May payment under the liquidated damages provision, holding such provision void as a penalty. The court found that Safari suffered the following damages as a result of Buyers' default:

$ 8,000.00 – loss of the use of the property (reasonable rental value of the property).
1,000.00 – July lease payment.
15,000.00 – loss of business.
2,118.32 – out-of-pocket expenses.
2,000.00 – cleaning and miscellaneous.
2,000.00 – attorney fees for foreclosure action.
50.00 – amount owed on inventory.

$30,168.32 – Total

The court rejected as speculative Safari's claimed damages for loss of fair market value of the business in the amount of $90,000. In addition, there was no evidence of the expenses of the first sale or those expenses expected upon resale after foreclosure.[2] The court subtracted the $30,168.32 from the $52,000 that Buyers

---

**1.** Buyers also agreed to purchase the inventory for $4,750. They paid $3,000 on April 1, 1986, but failed to pay $1,750 on April 15, 1986. After default, Buyers returned $1,700 inventory to Sellers. The purchase price of the real estate was therefore agreed to be $100,000.

**2.** Such evidence was absent despite the fact that the use of a realtor on both occasions could result in additional total expenses of approximately fifteen percent of value or $40,000.

paid under the sales agreement and found Buyers entitled to restitution in the amount of $21,831.68. Judgment was entered against Safari in that amount. Safari appeals. We affirm.

## ISSUES

### I

WHETHER THE FORFEITURE PROVISION CONTAINED IN THE CONTRACT FOR SALE CONSTITUTES A PENALTY AND IS VOID AS A MATTER OF LAW UNDER SDCL 53–9–4 AND SDCL 53–9–5.

SDCL 53–9–4 states: "Penalties imposed by contract for any nonperformance thereof are void. This section does not void obligations penal in form such as heretofore have been commonly used, but it voids their penal clauses." SDCL 53–9–5 states:

Every contract in which amount of damage or compensation for breach of an obligation is determined in anticipation thereof is void to that extent except the parties may agree therein upon an amount presumed to be the damage for breach in cases where it would be impracticable or extremely difficult to fix actual damage.

The latter portion of SDCL 53–9–5 creates an exception to the general rule that penalty clauses are void. It requires that the parties have the right to agree upon an amount that will represent damages if a breach subsequently occurs; however, the situation must be one in which it would be difficult to ascertain any damages.

Whether a forfeiture provision in a sales contract is an enforceable, liquidated damage provision or an unenforceable penalty is a question of law for the court. *Heikkila v. Carver*, 378 N.W.2d 214 (S.D.1985); *Prentice v. Classen*, 355 N.W.2d 352 (S.D.1984). Such a provision will be upheld if (1) damages in the event of breach are incapable or very difficult of accurate estimation at the time the contract was made; (2) there was a reasonable attempt by the parties to fix compensation; and (3) the amount stipulated bears a reasonable relation to probable damages and is not disproportionate to any damages rea-

sonably to be anticipated. *Heikkila, supra; Prentice, supra; Walter Motor Truck Co. v. State*, 292 N.W.2d 321 (S.D. 1980). The burden of establishing that such a provision is a penalty rests on the party against whom enforcement is sought. *Heikkila, supra; Prentice, supra.*

Determinative of this issue here is that a $75,000 downpayment was originally required by Safari, but that $50,000 was the maximum amount Buyers were able to raise. Absolutely nothing in the record indicates that the parties discussed that the $50,000 would be an appropriate amount to be forfeited in the event of a breach. The effect of the forfeiture provision, as Safari would have us believe, would be to require Buyers, in the event of a breach, to forfeit all sums of money previously paid by them.

The trial court held that the damages in the event of breach were extremely difficult to estimate, but the forfeiture provision was a penalty as there was no reasonable endeavor by the parties to fix a fair compensation, and the stipulated damages were not reasonably related to probable damages and were disproportionate to the reasonably anticipated damages. We agree.

The trial court submitted an exhaustive memorandum decision, which was incorporated into extensive findings of fact and conclusions of law. It considered, analyzed, and applied our relevant holdings in *Walter Motor Truck, supra; Heikkila, supra;* and *Prentice, supra.* Based upon these considerations, and our analysis of the law, we cannot say that the trial court clearly erred in its findings of fact. In addition, we find no error in the trial court's conclusion that the forfeiture provision constituted a penalty and is void as a matter of law.

### II

WHETHER THE TRIAL COURT ERRED IN DETERMINING THE PLAINTIFF'S DAMAGES.

The trial court awarded Safari the following damages: (1) Reasonable rental value of the business at $2,000 per month

for a period of four months (April—July), for a total of $8,000; (2) an additional $1,000 rental for the month of July; (3) $15,000 for the loss of business; (4) out-of-pocket expenses in the amount of $2,118.32; (5) $2,000 for restoration of the premises to its former condition; (6) $2,000 for attorney fees and costs; and (7) $50 which is the difference between $1,750 owed on inventory and the value of the inventory actually returned in the amount of $1,700. The total damages determined by the court were $30,168.32. The court also concluded that since Buyers had paid $52,000 on the contract price, that they were entitled to restitution of $21,831.68, which represents $52,000 paid less $30,-168.32 in damages.

■ The trial court may order restitution to the defaulting vendee by virtue of its powers to equitably adjust the rights of the parties in a foreclosure action. *Heikkila, supra; see also* SDCL 21–50–2. Allowing Sellers to retain all payments made under the contract would unjustly enrich them.

As previously stated, we have reviewed the memorandum decision which was incorporated into the findings of fact and conclusions of law. We agree with the trial court's determination of restitution and damages and conclude that the trial court did not commit err on the issues of law nor was it clearly erroneous on the issues of fact. *Prentice, supra.*

Affirmed.

WUEST, C.J., and MORGAN and HENDERSON, JJ., concur.

SABERS, J., dissents.

SABERS, Justice (dissenting).

I dissent because the Buyers failed to meet their burden of proof that the stipulated damages were not reasonably related to probable damages.

1. *Reasonable endeavor to fix fair compensation.*

Safari cites *Heikkila v. Carver*, 378 N.W.2d 214 (S.D.1985), and argues that the trial court erred in finding that there was no reasonable endeavor by the parties to fix a fair compensation. The *Heikkila* court emphasized the buyers' opportunity to closely review the agreement with their attorney and the parties' arms-length bargaining for the sale contract including the liquidated damages provision. The court further stated that "the default provision itself was the best evidence of the parties' efforts and intentions at the time of sale." *Id.* at 217. Safari points out that, similar to *Heikkila,* both parties were represented by competent legal counsel at the time of the transaction and the buyers reviewed the agreement extensively with their attorney.

In holding that the parties had not attempted to fix a fair compensation during their negotiations, the trial court stated that there was no discussion of damages for breach, or any attempt to stipulate to an amount of damages representing a fair loss of profits or rental value. The court should consider the instrument as a whole, the situation of the parties, and the surrounding circumstances. *Prentice v. Classen*, 355 N.W.2d 352 (S.D.1984); *Walter Motor Truck Co. v. State, Dep't of Transp.*, 292 N.W.2d 321 (S.D.1980). The fact that the original down payment of $75,000 was reduced to $50,000 is a consideration, but not determinative as claimed by the majority. The testimony shows that Buyers were experienced in business and aware of the challenges and uncertainties associated with operating a business. They reviewed the agreement in detail with their attorney and understood that all payments made under the contract would be lost in the event of breach. In fact, Buyers' attorney made several changes to other provisions of the agreement during the course of negotiations. This would indicate that Buyers understood the liquidated damages provision, believed it was reasonable, and believed the loss of the down payment was reasonable compensation to Sellers in the event of Buyers' breach. In short, as part of an agreement that was bargained for at arms length, the liquidated damages provision must be considered bargained for at arms length. As in *Heikkila,* the liquidated damages provision itself is the best

evidence of the parties' efforts and intentions to fix a fair compensation.

### 2. *Stipulated damages were reasonably related to probable damages.*

Safari also challenges the trial court's determination that the liquidated damages were not reasonably related to probable damages. The court based this determination partially on the fact that the down payment constituted twenty-eight percent of the entire contract price, or nineteen percent of the total value of the bar and real estate. The court cited the refusal of other jurisdictions to enforce such provisions where payments before default exceeded ten percent of the purchase price. However, in *Heikkila,* this court upheld a liquidated damages provision where the down payment was nearly twenty-seven percent of the total purchase price.

In this case, the down payment percentage was reasonable because of the type of business involved. Acknowledging the difficulty of ascertaining the probable damages and the potentially quick decline of a bar business, the trial court stated:

> A bar business involves managerial expertise on the part of the vendee so that business clientele, and thus good will and ultimately profits, is maintained. Such property (inventory, fixtures, and equipment) is also highly susceptible to waste while in the possession of the vendee; it would thus arguably be difficult to accurately estimate damages in event of a breach.

Here, the major, unexpected events were the incredibly short term of occupancy by the Buyers and the rapid deterioration of the business. Both events were in Buyers' control and Sellers should not be penalized by an after-the-fact judgment. The reasonableness of the liquidated damage provision must be viewed at the time of contracting not after default or breach. SDCL 53-9-5; *Heikkila, supra; Prentice, supra.*

As stated in *Walter Motor,* liquidated damage provisions "serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable[.]" *Id.* at 323. In this case, the parties recognized the usefulness and need for a liquidated damages provision and included it in the sale contract. The burden of establishing that such a provision is a penalty rests upon the Buyers and they have not sustained their burden of proof. *Heikkila, supra; Prentice, supra.* They have failed to produce any evidence that the liquidated damages were not reasonably related to probable damages or that the liquidated damages were disproportionate to reasonably anticipated damages. Without such evidence the liquidated damages provision cannot be declared an unlawful penalty. As this court stated in *Prentice, supra* at 355:

> In the absence of any evidence clearly establishing a substantial disparity between the payments made on the contract, together with the improvements made to the property, and the loss of rents and other detriment suffered by the vendors, we cannot say that the enforcement of the liquidated damages clause worked an unconscionable forfeiture upon Mrs. Classen.

While Buyers merely asserted disparity, Sellers' evidence indicated that their loss may have exceeded $100,000. Under these circumstances, a liquidated damages provision must be upheld.

### 3. *The parties fully complied with the plain language of SDCL 53-9-5.*

SDCL 53-9-5 provides in part that:

> [T]he parties may agree therein upon an amount presumed to be the damage for breach in cases where it would be impracticable or extremely difficult to fix actual damage.

This is a case where actual damage was impracticable or extremely difficult to fix, and the parties agreed upon an amount presumed to be the damage for breach. The trial court and majority go beyond the statute when they require "discussion" of the stipulated damage. The liquidated damages provision was fully understood and agreed to by both Buyers and Sellers in an arms-length, negotiated transaction. The parties fully complied with the statute. Nothing more can be required.

We should reverse the judgment of the trial court and hold as a matter of law that the Buyers failed to sustain their burden of proof that the liquidated damages provision was a penalty. Therefore, Safari is entitled to the entire down payment and initial installment payment under the provision.