In re Charles D. LARSEN, d/b/a Farmer, Trucker, and Jeraine (NMN) Larsen, Debtors.

Charles D. LARSEN and Jeraine Larsen, Plaintiffs,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Ivan Roth, and Gordon Roth, Defendants.

Bankruptcy No. 485–00053–PKE.
Adv. No. 90–4024–PKE.

United States Bankruptcy Court, D. South Dakota.

Dec. 21, 1990.

David O. Carter, Sioux Falls, S.D., for plaintiffs.

Roger W. Damgaard, Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, S.D., for Metropolitan Life Ins. Co.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### ACTION

A case of first impression as to whether a warranty deed in escrow agreement may be given equitable adjustment considerations accorded an executory contract under South Dakota law, is before the Court. For reasons articulated below, the Court concludes that a deed in escrow is entitled to equitable adjustment treatment under South Dakota law. Restitution to the defaulting vendee debtor is appropriate where the monetary benefits paid under the contract exceed detriments the vendor creditor suffered and up to $30,000 of an executory land contract's restitution award may be claimed by a debtor as exempt property under South Dakota's homestead exemption statute. The instant matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (O). The Court has jurisdiction over the parties and subject matter under 28 U.S.C. § 1334. This Memorandum Decision constitutes Findings of Fact and Conclusions of Law pursuant to Fed.R. Civ.P. 52 and Bankr.R. 7052.

### FINDINGS OF FACT

Charles and Jeraine Larsen (Larsens or Debtors) borrowed $185,000 from Metropolitan Life Insurance Company (Metropolitan) in 1980. Metropolitan received a note and a mortgage on 467 acres of Debtors' farmland in Turner County.

Debtors filed Chapter 11 in 1985. On March 13, 1986, the Court approved an agreement between Debtors and Metropolitan entitled, "Stipulation and Order Regarding Adequate Protection and Determination" (stipulation). The stipulation required the Larsens pay Metropolitan $213,-000, as amortized, over 20 years.

Pursuant to the stipulation's adequate protection clause, Debtors executed a war-

ranty deed naming Metropolitan as grantee. Land Title Guaranty Company served as the escrow agent. Under the stipulation, Debtors' default of real estate taxes or payments due Metropolitan would trigger the release of the escrowed deed to Metropolitan. The stipulation gave the Larsens 30 days to cure upon notice of default. The stipulation empowered the escrow agent to release the escrowed deed to Metropolitan upon Metropolitan's affidavit that Debtors defaulted and failed to cure. Debtors incorporated the Metropolitan-drafted stipulation into their plan, confirmed August 21, 1987. After making periodic payments of about $80,000, the Debtors defaulted.

After the 30 day cure period lapsed, Metropolitan obtained possession of the escrowed deed and recorded the same with the Turner County Register of Deeds on April 24, 1990. Metropolitan took possession of the farm on or about May 1, 1990. Metropolitan received the farmland in poor condition except for 12 acres of oats planted by the Debtors, which they were not permitted to harvest. Since its occupation, Metropolitan has had the land farmed.

Debtors' counsel creatively and aggressively tried to forestall Metropolitan from receiving the land by taking actions such as filing a Chapter 12 and a subsequent Chapter 13. Debtors, on May 17, 1990, commenced an action in the South Dakota Circuit Court, First Judicial Circuit, County of Turner, attempting to get back the land given to Metropolitan under the stipulation's default clause. Debtors also filed a notice of lis pendens against the lost farm. Debtors' counsel's ceaseless and creative attempts to save the Larsens' farm are laudable. Absent the stark drive and commitment of Attorney David O. Carter and other attorneys zealously fighting for successful reorganizations, a debtor's ability to reorganize and obtain a fresh start in a meaningful fashion would be impaired.

Metropolitan removed the Larsens' state court action to this Court. The Larsens' removed complaint basically argues that, because Debtors believed the Metropolitan loan was never to exceed $230,000 and the land now has appreciated to about $311,000, the Debtors should receive the difference between the outstanding loan and the realty's fair market value in either land, under South Dakota's homestead exemption, or in cash. Metropolitan argued res judicata and submitted evidence of its costs with the Larsens' farm and provided the Court with income and interest risk and loss factors. The land's rental value was not addressed at the hearing. After the matter was taken under advisement, both parties submitted briefs on the issues of res judicata, collateral estoppel, equitable adjustment, and damages. The four pertinent issues before the Court are addressed seriatim.

## ISSUES

1. Do the doctrines of collateral estoppel and res judicata not preclude the equitable adjustment lawsuit? Yes.

2. Does the doctrine of equitable adjustment, recognized in South Dakota as applicable to executory contracts, apply to a deed held in escrow agreement? Yes.

3. May a defaulting vendee's equitable adjustment award be claimed as exempt under South Dakota's homestead exemption up to the monetary ceiling amount permitted under state statute but not claim real estate recovered by the vendor? Yes.

4. Is the "lost rental" approach method appropriate to measure damages in equitable adjustment? Yes.

## CONCLUSIONS OF LAW

### I.

The extent to which Debtors' action is barred by the doctrines of either res judicata or collateral estoppel must be addressed first. Res judicata refers to claim preclusion, and collateral estoppel concerns issue preclusion. *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir.1990). Debtors may not relitigate issues or claims previously litigated.

The doctrine of res judicata bars a second suit where the initial suit resulted in a judgment on the merits between the

same parties or their privies based on an identical cause of action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981); *Montana v. U.S.*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Park-lane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Metropolitan and Debtors were parties in previous litigation.

The second suit's cause of action must be the same as the first lawsuit's in order for res judicata to apply. *Id.* The gist of all previous 1990 litigation, brought by Debtors against Metropolitan and Debtors' now-dismissed Chapter 12 and Chapter 13 petitions, was that Metropolitan should be denied the benefit of its bargain. Debtors' counsel relentlessly tried nearly every conceivable tactic in attempting to prevent the release of the escrowed deed to Metropolitan. Debtors' present lawsuit seeks to retain at least part of their land and raises an equitable adjustment claim.

An equitable adjustment claim may award restitution to defaulting vendees in executory contracts on real estate. *Beitelspacher v. Winther*, 447 N.W.2d 347, 350 (S.D.1989); *Safari, Inc. v. Verdoorn*, 446 N.W.2d 44, 45 (S.D.1989); *Dow v. Noble*, 380 N.W.2d 359, 360 (S.D.1986); *Heikkila v. Carver*, 378 N.W.2d 214, 217 (S.D.1985); *Prentice v. Classen*, 355 N.W.2d 352, 355 (S.D.1985). Equitable adjustment departs from South Dakota's historic strict adherence of contract default clause provisions which enable the vendor to terminate the contract, recover the real estate, and retain all installments paid by the defaulting purchaser. Note, *"Equitable Adjustment" in Real Estate Contract Foreclosures: Victory for the Contract Vendee or Death of Installment Land Contract Financing?*, 35 S.D.L.Rev. 402, 407 (1990). Published South Dakota opinions apply the equitable adjustment doctrine to an executory land sale contract, known in South Dakota as a contract for deed. *Id.*

Previous litigation between the Larsens and Metropolitan focused on the parties' bargain in an attempt to keep Metropolitan off the farm. In contrast, equitable adjustment looks to the reasonableness of a liquidating damages clause or unjust enrichment, with the remedy being restitution. *Beitelspacher*, 447 N.W.2d at 347. A defaulting vendee may obtain restitution under equitable adjustment, but not the real estate. *Prentice*, 355 N.W.2d at 355. Debtors' equitable adjustment claim is distinct from all previously adjudicated claims. The parties' earlier litigation over the stipulation argued unjust enrichment in a broad manner, but the narrow, direct, and potentially dispositive claim of applying equitable adjustment to the Larsens' deed in escrow has never been adjudicated.

In addition to claims raised in previous litigation, res judicata prohibits a later lawsuit of a claim on grounds raised, or those which could have been raised, in a previous action. *Lane v. Peterson*, 899 F.2d at 741; *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983). A constricted interpretation of res judicata would preclude Debtors, because a possibility exists that equitable adjustment could have been previously raised. Res judicata, however, is a flexible principle intended to promote finality of judgments, discourage multiple litigation, and conserve judicial resources. *In re Yagow*, 62 B.R. 73, 76 (Bankr.D.N.D. 1986). South Dakota's recent adoption of the equitable adjustment doctrine and the Larsens' claim's novelty merit consideration as to res judicata's flexibility.

The South Dakota Supreme Court's first decision upholding a trial court's equitable adjustment monetary award to the defaulting buyer occurred in 1986. *Dow*, 380 N.W.2d at 360. South Dakota's unquestionable acceptance of equitable adjustment in defaulted executory land contracts occurred in the mid-to-late 1980's. *Equitable Adjustment*, 35 S.D.L.Rev. at 407. Exhaustive research failed to locate any South Dakota case adjudicating whether equitable adjustment applies in a deed in escrow context. South Dakota's recent adoption of equitable adjustment and the first known argument that the equitable adjustment doctrine applies to a deed in escrow indicate it would be unsound to

preclude Debtors' equitable adjustment claim since a meaningful and fair opportunity to raise the claim earlier did not exist. The Court concludes res judicata does not preclude the equitable adjustment claim because of the claim's recent adoption, its novelty, and the fact the claim has not been previously litigated between the parties or their privies.

■■■ Collateral estoppel precludes relitigation of an issue where the second suit is upon a different cause of action, provided the issue in the prior suit's judgment was actually litigated by a court of competent jurisdiction and necessary to the outcome of the first suit. *Parklane Hosiery*, 439 U.S. at 326, 99 S.Ct. at 649; *City of Bismarck v. Toltz, King, DuVall, Anderson & Assocs., Inc.*, 767 F.2d 429, 430–31 (8th Cir.1985). While privity is required in res judicata, collateral estoppel only mandates that the party against whom the judgment is used had a fair and full opportunity and incentive to litigate the issue in the prior suit. *Blonder–Tongue Laboratories, Inc. v. University of Ill. Found.*, 402 U.S. 313, 326, 91 S.Ct. 1434, 1441, 28 L.Ed.2d 788 (1971). Metropolitan and Debtors were parties previously engaged in previous lawsuits over the deed in escrow agreement.

■■■ In order for equitable adjustment to apply, the vendee must establish that the contract's default provision is an unlawful penalty warranting restitution or unjust enrichment occurs if the default clause is upheld. *Heikkila*, 378 N.W.2d at 216. The issue of whether the stipulation's adequate protection default provision is an unlawful penalty has yet to be litigated. Other issues, such as the proper measure of damages and whether a restitution award may be claimed as exempt property under South Dakota's homestead exemption, have not been litigated, either. Collateral estoppel does not prevent determination of amounts due and owing where the specific amount was not litigated earlier. *Lewton v. McCauley*, 460 N.W.2d 728, 730 (S.D.1990). At best, previously litigated issues, approaching unjust enrichment, remotely relate to the basis of equitable adjustment, but the issues between the past and present suits are too distinct.

■■■ Relitigation of issues actually litigated, or which could have been litigated but were not, are also barred. *Lovell*, 719 F.2d at 1376. The recent adoption and novelty of the issues underlying the equitable adjustment claim render collateral estoppel inapplicable. The Court concludes that collateral estoppel does not preclude the Larsens from bringing their current matter. Furthermore, bankruptcy courts have general authority to change the terms of their own orders when equity so requires. *In re Olsen*, 861 F.2d 188, 189 (8th Cir.1988). Neither res judicata nor collateral estoppel precludes the Larsens' equitable adjustment claim.

## II.

■■■ The equitable adjustment doctrine applies to executory contracts and requires proof that the contract's liquidating damages clause is either an unconscionable penalty or that the vendors would be unjustly enriched by retention of all payments made by the vendee. *Heikkila*, 378 N.W.2d at 219. If the doctrine applies, restitution is awarded to the defaulting vendee by virtue of a trial court's equitable powers to adjust the rights of parties in a foreclosure action. *Id.* Equitable adjustment refuses to strictly enforce a real estate executory contract's forfeiture clause where there is a substantial disparity between payments made on the contract, together with improvements to the property, and the detriments suffered by the vendors. *Heikkila*, 378 N.W.2d at 217–19. The historic seller's windfall, when a buyer defaulted with substantial equity paid into the property, is now extinct.

■■■ Equitable adjustment's underpinning, S.D.C.L. § 21–50–2, in pertinent part, provides that: "[t]he court in such actions shall have the power to equitably adjust the rights of all parties thereto, ...." *Safari*, 446 N.W.2d at 47; *Noble*, 380 N.W.2d at 360. "Such actions" refers to a foreclosure suit prompted by a default in an executory contract. S.D.C.L. § 21–50–1. Where the statute's language is plain, the

sole function of the court is to enforce it by its terms. *See Ron Pair Enters., Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The Court shall apply the foundation of the equitable adjustment statute's plain and clear language.

■■■■ South Dakota courts actively apply S.D.C.L. § 21–50–2's equitable adjustment to contract for deed transactions. Equitable Adjustment, 35 S.D.L.Rev. at 410. Equitable adjustment may be retroactively applied. *Beitelspacher*, 447 N.W.2d at 352. A contract for deed is an executory contract in the District of South Dakota. *See In re Speck*, 50 B.R. 307 (Bankr.D.S.D. 1985), *aff'd*, 62 B.R. 61 (D.S.D.1985), *aff'd*, 798 F.2d 279 (8th Cir.1986). In a contract for deed, the vendee of a contract for deed acquires equitable title and the vendor retains legal title. *In re Hunt*, 53 B.R. 91, 92 (Bankr.D.S.D.1985). The buyer has possession of the land, but the deed and legal title pass to the vendee only after contract completion. *Id.* Similarly, the deed in escrow is not truly possessed by the grantor/debtor and the grantee/lender obtains delivery upon performance of a certain condition or the happening of a contingency. 30A C.J.S., Escrows § 5 (1965). The Larsens could receive their escrowed warranty deed back only after all contract payments were made. Any argument that a deed in escrow is akin to a mortgage, based on the grantor retaining title, is illusory, since, once released from escrow, no condition restrains the grantee from recording the delivered deed. Metropolitan, as grantee, recorded the warranty deed delivered from escrow when the contingency of default occurred.

Traditionally, the vendor's rights in a contract sale are much greater than those of a conventional third-party mortgagee because the vendor quickly and reliably enforces forfeiture clauses enabling the vendor to terminate the contract, recovers all the property, and retains all installments and improvements made by the vendor. Law review article at 402. Statutory protections afforded mortgages, such as a minimum 180–day redemption period under S.D.C.L. § 21–49–12, are not accorded executory contracts such as a contract for deed or deed in escrow. It is not uncommon for contract for deed redemption periods to be as short as 30 days. *Safari*, 446 N.W.2d at 45; *Prentice*, 355 N.W.2d at 353. Similarly, the stipulation gave the Larsens only 30 days to cure in order to prevent the release of the escrowed deed. Harsh foreclosure provisions, unbridled by a lack of statutory rights benefiting a defaulting vendee in an executory contract of land, exemplify the injustice the equitable adjustment doctrine avoids.

■■■■ A contract for deed is an executory contract under bankruptcy law and South Dakota state law. *Speck*, 798 F.2d at 280 (state case). A stipulation is a contract. Like a typical vendee defaulting in a contract for deed, the Larsens deed in escrow stipulation limited redemption to 30 days, the stipulation permitted an expedited procedure to recover the land, and the Debtors forfeited all equity in the lost land. The stipulation stripped the Larsens of all statutory protections they were entitled to under their pre-bankruptcy mortgage with Metropolitan.

S.D.C.L. § 21–50–2's executory contract language does not exclude a deed in escrow. The abundance of the contract for deed subject matter in cases and the absence of deed in escrow transaction cases are attributable to the great prevalence of contracts for deed in the state. South Dakota law limits the equitable adjustment doctrine to executory contracts for land, such as a contract for deed. A contract for deed is similar to the Larsens' deed in escrow because both contracts permit quick repossession of the land, foreclosure of most rights, and little statutory protections. Equitable adjustment's goals of eliminating the undue hardship of unjust enrichment or an unreasonable liquidating damages provision directly would provide the relief intended by the doctrine to the Debtors' escrow in deed. South Dakota common law distinctly recognizes a willingness to protect defaulting buyers from harsh and inequitable forfeiture provisions in real estate sales contracts. *Dow*, 380 N.W.2d at 362; *Heikkila*, 378 N.W.2d at

216. Under South Dakota law, the Larsens' deed in escrow qualifies as an executory contract entitled to equitable adjustment.

Whether a forfeiture provision in a contract is an enforceable liquidating damage provision or an unenforceable penalty is a question of law determined upon consideration of the instrument in the entirety, the situation of the parties, the subject matter of the contract, and the circumstances surrounding its execution. *Prentice*, 355 N.W.2d at 355. A forfeiture provision in a contract is ordinarily upheld if: 1) at the time the contract was entered into, the damages, in the event of breach, were incapable or very difficult to accurately estimate; 2) there was a reasonable endeavor by the parties to fix compensation; and 3) the amount stipulated to bears a reasonable relation to probable damages and is not disproportionate to any damages reasonably anticipated. *Heikkila*, 378 N.W.2d at 216. Alternatively, the defaulting vendee may obtain relief by proving enforcement of the contract's default clause results in an unjust enrichment to the vendor. *Id.* The burden of establishing the liquidating damage provision is an unlawful penalty or unjust enrichment rests with the party against whom enforcement is sought. *Id.* The Larsens must prove the stipulation's adequate protection clause is a penalty or that enforcement of the provision results in unjust enrichment.

Liquidating damage clauses found to be a penalty or unjust enrichment warrants an equitable adjustment of the contract. S.D.C.L. §§ 53–9–5, 21–50–2; *Prentice*, 355 N.W.2d at 355. Equitable adjustment is appropriate where there exists a substantial disparity between the payments made on the contract along with property improvements versus detriments such as the loss of rent. A real estate contract's forfeiture provision, requiring purchasers forfeit all payment in event of default, is an unenforceable penalty where there was no reasonable endeavor by the parties to fix a fair compensation and the stipulated damages were not reasonably related to probable damages and were dis-

proportionate to reasonably anticipated damages. *Safari*, 446 N.W.2d at 46.

In *Safari*, the vendees voluntarily relinquished possession of a lounge purchased on a contract for deed after paying $52,000 or 30 percent of the contract price. *Id.* at 45. The contract for deed permitted 30 days to cure a default. In comparison, the Larsens paid $80,000 or 27 percent of the $213,000 contract price. The Larsens' stipulation's default clause mandates complete forfeiture of the land, complete loss of any equity, and a redemption period of 30 days. The executory contract provisions in *Safari* and in Larsens' stipulation are similar. The stipulation and the record before the Court lack any indication that Metropolitan and the Larsens endeavored to fix a fair compensation of damages. The release of the deed in escrow to Metropolitan and complete forfeiture are not reasonably related to probable damages and are disproportionate to reasonably anticipated damages because such forfeiture provisions ignore equity and actual damages. Under the stipulation, Metropolitan received the escrowed deed even if the Larsens defaulted by a mere dollar, even though Metropolitan's damage is only one dollar.

The Larsens' $80,000 total payments exceed *Safari*'s $52,000 considerably, and the Debtors' equity of 27 percent is close to *Safari*'s 30 percent. Similar circumstances in *Dow*, where the vendee paid 31 percent on a $432,000 executory contract before defaulting, warranted equitable adjustment of the contract. *Dow*, 380 N.W.2d at 361. The Court concludes that the liquidating damages clause in the Larsens' stipulation is void as a penalty. The voiding dispositive renders a decision on unjust enrichment unnecessary.

### III.

The appropriate remedy, in an equitable adjustment of an executory contract for land suit, is monetary restitution, and not the specific performance of giving defaulting vendees any portion of the real estate. *Beitelspacher*, 447 N.W.2d at 350–54; *Prentice*, 355 N.W.2d at 355. Should

the balance of the equities justify an award of restitution, the defaulting Larsens may obtain a monetary award, but not the real estate.

 S.D.C.L. § 43–31–30 codifies South Dakota's opting out of federal exemptions under 11 U.S.C. § 522(d) in favor of state exemptions. *In re Bowen*, 80 B.R. 1012 (Bankr.D.S.D.1987). South Dakota's homestead exemption provides that proceeds from the sale of a homestead are absolutely exempt for one year after receipt by the owner, up to a ceiling of $30,-000. S.D.C.L. § 43–45–3. An attempt to sell property does not manifest an intent which would defeat the homestead exemption. *In re Hansen*, 17 B.R. 239 (Bankr.D.S.D.1982). The escrow for deed stipulation transferred the property to Metropolitan, who has since farmed it and may sell it. The stipulated placement of the deed in escrow does not vitiate Debtors' claim of a homestead right because the Larsens entered into the stipulation attempting to save their homestead.

 South Dakota's homestead exemption may be claimed only by debtors residing in the state who intended the property as a homestead. *In re Hlavac*, 73 B.R. 612 (Bankr.D.S.D.1987); *In re Lemme*, 41 B.R. 829 (Bankr.D.S.D.1984); *In re Volk*, 26 B.R. 457 (Bankr.D.S.D.1983). The Larsens' lengthy litigation to keep their farm unequivocally established their intent to claim the land they lived on as their homestead. The Larsens meet all prerequisites to claim South Dakota's homestead exemption. The Court concludes that a maximum of $30,000 may be claimed by a debtor as exempt property under South Dakota's homestead exemption where successful in an equitable adjustment suit. All that remains is computing the appropriate amount of restitution.

## IV.

Equitable adjustment guidelines weigh the vendor's benefits against detriments suffered. *Dow*, 380 N.W.2d at 360. No uniform formula exists among the numerous states applying equitable adjustment to executory contracts for real estate. *Eq-uitable Adjustment*, 35 S.D.L.Rev. at 423. Metropolitan emphatically maintains that all of its costs, interest risk, and loss factors must be considered. The Larsens' formula choice focuses on the $80,000 paid under the stipulation and the increased market value. Both parties' formulas fail to properly reflect the judicial guidelines used to equitably adjust executory contracts.

 An equitable adjustment's restitution award evaluates the fairness of the forfeiture by calculating the defaulting party's restitution rights and weighing them against any offsetting damage claims. *Equitable Adjustment*, 35 S.D.L. Rev. at 411. Equitable adjustment's damages formula recognizes the detriments to include: lost rent, waste, physical damage, real estate taxes, the vendor's reasonable attorney fees related to the property, expenses to recover the land, and a percentage of the lost value of the real estate. *Safari*, 446 N.W.2d at 45–47; *Dow*, 380 N.W.2d at 360; *Heikkila*, 378 N.W.2d at 217. Benefits expressly recognized to the vendor include principal and interest paid by the defaulting vendee and improvements. *Id.* Income tax liability incurred as a result of the executory deed is not a balancing factor. *Beitelspacher*, 447 N.W.2d at 354. Damages too speculative to ascertain with any reasonable degree of specificity are not included in the calculation. *Safari*, 446 N.W.2d at 45. Metropolitan's risk and lost opportunity costs are too speculative to be considered. The executory contract is transformed into a lease of sorts, or a "lost rental," because the focus is on rents.

 A loss in market value is a detriment. *Dow*, 380 N.W.2d at 361. An increase in value is not expressly recognized as a benefit under any currently existing South Dakota equitable adjustment case. At a cursory glance, balancing increased market value as a benefit against the detriment of deflated market value is appealing. However, the risks assumed under the executory contract need be factored into an analysis of equity.

Metropolitan and the Larsens assumed various risks when they entered the stipulation for the deed in escrow. Metropolitan risked not getting paid and instead receiving the land back which could be in poor shape and of a lesser market value if land prices dropped. A drop in land prices leaves the creditor without recourse if the debtor is judgement proof. The Larsens assumed the risk that they may lose their land if payments were not made. Placement of all risks of loss, that is if the market went down Metropolitan would be forced to absorb it and if the value increased, the equity of the increase would go to the Larsens, is inequitable. Such a scenario places all contract risks on the innocent vendor. It also ignores the vendee's opportunity to get a loan to help avoid foreclosure based on collateral of the unencumbered equity of a market increase. The circumstances at bar and existing South Dakota law, compels the Court to conclude that inflation of the collateral based on market value is not a consideration in the equitable adjustment formula.

█ Most of the information needed to balance the equities has been entered into evidence. Thus far, valid benefits and detriments are:

Detriments:
| | |
|---|---|
| lost rent | yet unknown |
| real estate taxes delinquent | $16,481 |
| real estate taxes for ½ of 1990 | $ 3,600 |
| expenses to recover land, including legal fees | $18,522 |
| total rental value plus | $38,603 |

Benefits:
| | |
|---|---|
| principal and interest paid | $80,000 |
| total | $80,000 |

Debtors' improvements, and the dozen acres of unharvested oats, offset the terrible condition of the farmland Metropolitan received the property in. Legal fees include those associated with preparing the executory contract in bankruptcy and are part of the balancing process of the equation. *Dow*, 380 N.W.2d at 360. No other benefits or detriments are valid considerations under South Dakota's equitable adjustment doctrine. The reasonable rental not addressed by the parties, and a rental loss value hearing is required to ascertain whether the detriments exceed the benefits or if the benefits Metropolitan received warrant an award of restitution. The Court shall enter an appropriate order.

## ORDER OF EQUITABLE ADJUSTMENT, EXEMPTION AVAILABILITY, RESTITUTION, AND REQUIREMENT FOR RENTAL VALUATION HEARING

Pursuant to the Memorandum Decision entered this date, it is

ORDERED that the above-captioned debtors' escrowed deed, released to Metropolitan Life Insurance Company pursuant to the Stipulation and Order Regarding Adequate Protection and Determination of Secured Status, is an executory contract under South Dakota law entitled to equitable adjustment treatment; it is further

ORDERED that an executory land contract's restitution award may be claimed by a debtor as exempt property to the limit of $30,000 as permitted by the homestead exemption in S.D.C.L. § 43–45–3; it is further

ORDERED that the restitution computation of equitable adjustment balances detriments of lost rent, damages, reasonable attorney fees, recovery costs, waste and real estate taxes against the benefits of payments paid and improvements made by the defaulting party, and does not recognize other lost opportunity costs or an in-

crease in market price attributable to infla-
tion and income tax consequences, and the
netting the detriments against the benefits
results in the restitution award, if any ben-
efits exist, to the defaulting above-named
debtors; and it is further

ORDERED that a rental value hearing is
required to determine the amount of resti-
tution due the debtors, if any, and the
Court shall motion on the hearing.